NATIONAL UNION FIRE INSURANCE COMPANY, a Pennsylvania Corporation, Plaintiff–Appellant, v. **LESLIE RAGIL**, Defendant–Appellee

No. 14726

(USDC NO. 89–00448 ACK)

MAY 15, 1991

LUM, C.J., PADGETT, HAYASHI, WAKATSUKI, AND MOON, JJ.

OPINION OF THE COURT BY WAKATSUKI, J.

Two certified questions are presented by the United States District Court for the District of Hawaii for review by this court pursuant to Hawaii Rules of Appellate Procedure (HRAP) Rule 13.[1]

---

[1] Under Hawaii Revised Statutes (HRS) § 602–5(2) and HRAP Rule 13, this court may answer any question of law certified to it by a federal district court concerning Hawaii law which is "determinative of the cause" and where "no clear controlling precedent exists in the Hawaii judicial decisions."

## CERTIFIED QUESTIONS OF LAW

1) May a person operating a vehicle which he owned but failed to insure, who is injured as a result of the negligence of an underinsured party receive underinsured motorist benefits under a family member's automobile insurance policy which policy covers family members but excludes underinsured motorists coverage for bodily injury sustained by any person while occupying, or when struck by, any motor vehicle owned by the insured or any family member which is not insured for this coverage under this policy.

2) May a person operating a vehicle which he owned but failed to insure, who is injured as a result of the negligence of an underinsured party receive underinsured motorist benefits under a family member's automobile insurance policy which policy covers family members but excludes underinsured motorists coverage for bodily injury sustained by any person using the vehicle without a reasonable belief that that person is entitled to do so.

In reviewing these questions, we interpret "vehicle" to mean motorcycle and not motor vehicle. Therefore, we answer "no" to certified question one. In view of our answer to certified question one, we need not address certified question two.

I.

On August 9, 1988, Leslie Ragil (Ragil) was riding his motorcycle on Nimitz Highway when he was struck by a taxi driven by Han Chin Choe. Leslie Ragil was seriously injured. He

obtained a $35,000 policy limit settlement from Choe's bodily injury liability insurer. Leslie Ragil was the owner of the motorcycle, but he had obtained none of the required liability insurance coverage for it.

Ragil made a claim for underinsured motorist benefits under the automobile insurance policy his father, Anthony Ragil, had with National Union Fire Insurance. The motorcycle was not listed in that policy. However, the policy provided underinsured motorist coverage to a "covered person," which by definition included family members related by blood to the named insured and living in the same household. At the time of the accident, Ragil was residing with his parents.

The underinsured motorist coverage provision of the policy contained the following exclusions:

> We do not provide Underinsured Motorists Coverage for bodily injury sustained by any person:
> 1.   While occupying, or when struck by, any motor vehicle owned by you or any family member which is not insured for this coverage under this policy.
> . . . .
> 3.   Using the vehicle without a reasonable belief that that person is entitled to do so.

Based on these two exclusions, National denied coverage. On June 13, 1989, in the United States District Court for the District of Hawaii, National filed a complaint for Declaratory Judgment seeking a declaration that it had no "obligation" to provide underinsured motorist benefits to Ragil. National then filed a motion for summary judgment asking the court to declare, as a matter of law, that National had no such "obligation."

Ragil filed a motion in opposition and a cross–motion for summary judgment asserting he was entitled to coverage because the "owned vehicle" exclusion was void and the "reasonable belief" exclusion was inapplicable.

On June 7, 1990, the district court certified the two questions of law for our review.

## II.

Under certified question one, Ragil argues underinsured motorist coverage should be extended to him in spite of the owned motor vehicle exclusion on three grounds. First, such an exclusion has previously been held to be void in *Kau v. State Farm Mutual Automobile Insurance Co.*, 58 Haw. 49, 564 P.2d 443 (1977). Secondly, based on *Kim v. State Farm Mutual Automobile Insurance Co.*, 736 F. Supp. 218 (D. Haw. 1990), and *Palisbo v. Hawaiian Insurance Co.*, 57 Haw. 10, 547 P.2d 1350 (1976), this jurisdiction takes a "person–oriented" approach to insurance coverage and other "person–oriented" jurisdictions have held such exclusions to be void. Lastly, the legislative history of Hawaii's insurance statutes supports finding the exclusion void.

National asserts Ragil is not eligible to receive underinsured benefits because he was operating his motorcycle without any insurance coverage; specifically, allowing recovery would be inequitable because an uninsured motorist who intentionally disregards mandatory insurance requirements should not be entitled to benefits. Also, National argues Hawaii Revised Statutes (HRS) § 431:10C–102(b)(1) requires courts to treat uninsured drivers more "severely in the criminal or civil areas." Lastly, National contends the unambiguous language of the exclusion does not provide coverage for the injuries of anyone who operates a motor vehicle that was owned by any family member and was not insured under the policy.

## III.

Both Ragil and National overlook the fact that the insurance policy does not expressly provide coverage for motorcycles.

Exclusion 8 under Part A: Liability Coverage of the automobile insurance policy states:

> We do not provide Liability Coverage:
> . . . 8. For the ownership, maintenance or use of any motorized vehicle having less than four wheels.[2]

Based on the foregoing, coverage does not depend on whether or not the motorcycle was listed in the policy, or whether or not exclusion one is void under Hawaii law. In either case, it is clear the policy could not have provided coverage for a motorcycle.

## IV.

More importantly, the Hawaii legislature drew a distinction between motorcycles and motor vehicles in enacting the no–fault insurance laws, Article 10C of HRS chapter 431 entitled Motor Vehicle Insurance.[3] The legislature exempted, with limited exceptions, motorcycles from the no–fault insurance laws and created a separate section on required insurance coverage for motorcycles. In doing so, the legislature did not require insurers to offer underinsured coverage to motorcycle owners or operators in contrast to the requirement that it be offered to motor vehicle owners or operators.

We note that motorcycles are specifically excluded from the definition of motor vehicles under Article 10C, Part I, entitled General Provisions. HRS § 431:10C–103 defines motor vehicle as:

---

[2] Exclusion 8 qualifies the definition of motor vehicle found in the State of Hawaii Basic No–Fault Endorsement, under Part G of the policy. That definition included a vehicle with less than four wheels.

[3] At the time of Ragil's accident on August 9, 1988, the 1987 Special Pamphlet, Title 24 Insurance, Chapter 431 Insurance Code, which became effective July 1, 1988, was applicable.

(8) . . . any vehicle of a type required to be registered under chapter 286, including a trailer attached to such a vehicle, but not including motorcycles and motor scooters.[4]

Under Article 10C, Part III, entitled Coverages and Rights, insurers are required to offer underinsured coverage only for motor vehicles. HRS § 431:10C–302 states in relevant part:

Required optional additional insurance. (a) In addition to the no–fault coverages described in section 431:10C–301, every insurer issuing a no–fault policy shall make available to the insured the following optional insurance under the following conditions:

. . . .

(4) Coverage for loss resulting from bodily injury or death suffered by any person legally entitled to recover damages from owners or operators of underinsured motor vehicles[.]

The legislature specifically exempted, with limited exceptions, motorcycles from the no–fault insurance laws of Article 10C. HRS § 431:10C–501 states in relevant part:

§ 431:10C–501 Motorcycle or motor scooter excluded from article. (a) All *motorcycles* and motor scooters required to be registered under chapter 286 *shall be exempt from this article*; provided that: (Emphasis added.)

(1) No person shall drive a motorcycle or motor scooter upon any public street, road or highway of this State at any time unless such vehicle is insured at all times under a liability insurance policy as provided in section 431:10C–503;

---

[4] Chapter 286 is the Hawaii Highway Safety Act.

(2) In the case of accidental harm arising out of a motorcycle or motor scooter accident to any passenger of such motorcycle or motor scooter, or any pedestrian, motorcycles and motor scooters shall not be exempt from section 431:10C–301, section 431:10C–304 and section 431:10C–306;

(3) In the case of accidental harm arising out of an accident involving a motorcycle or motor scooter and a motor vehicle, the owner or operator of a motorcycle or motor scooter shall not be exempt from section 431:10C–306.[5]

In enacting the statute, the legislature expressly stated it intended to exclude motorcycle owners and operators from the benefits provided by the no–fault statutes. *See* Sen. Stand. Comm. Rep. No. 908, in 1985 House Journal, at 1441–42. The limited exceptions to the exemption do not evidence any intent to include overall the same no–fault benefits that are provided for motor vehicle owners or operators. Further, none of these limited exceptions apply to the facts of this case; that is, none require an insurer to offer underinsured benefits to motorcycle owners or operators.

The legislature created the limited exceptions to address only the following:

> Your committee is concerned with (1) keeping no–fault coverage intact in cases where a motorcycle rider strikes a pedestrian, or a passenger is injured; (2) continuing coverage for property damage and personal injury liability for pedestrians and riders as in no–fault; and (3) maintaining the threshold amount, under no–fault insurance, for those pedestrians or passengers injured by

---

[5] HRS § 431:10C–306 abolishes tort liability for accidental harm due to motor vehicle accidents except when certain threshold requirements are met.

a motorcycle rider. Sen. Stand. Comm. Rep. No. 688, in 1985 Senate Journal, at 1180–81.

The testimony from all parties revealed the following concerns: (1) maintaining the threshold amount under no–fault insurance for operators of motor vehicles, as well as for operators of motorcycles and motor scooters; (2) preventing operators of motorcycles or motor scooters from submitting claims under any no–fault policy when said operator is involved in an accident; (3) precluding owners or operators of motorcycles or motor scooters from claiming no–fault benefits as pedestrians, or under the assigned claims program of the Hawaii Joint Underwriting Plan; and (4) maintaining the consistency of chapter 294, [6] Hawaii Revised Statutes, by completely deleting all reference to motorcycles and motor scooters. Hse. Stand. Comm. Rep. No. 908, in 1985 House Journal, at 1441–42.

Thus, having generally exempted motorcycle owners and operators from the provisions of Article 10C, the legislature chose to separately describe the required insurance coverage for motorcycles in Article 10C, Part V, entitled Motorcycles and Motor Scooters. Part V does not require insurers to offer underinsured coverage. HRS § 431:10C–503 provides in relevant part:

Required motorcycles and motor scooters policy coverage. (a) An insurance policy covering a motorcycle or motor scooter shall provide insurance to pay, on behalf of the owner or any operator of the insured vehicle, . . . .

---

[6] HRS chapter 294 on Motor Vehicle Accident Reparations was recodified as Article 10C in the 1987 Special Pamphlet, Title 24 Insurance, Chapter 431 Insurance Code, which became effective on July 1, 1988.

(1) Liability coverage of not less than $35,000 for all damages arising out of accidental harm sustained by any one person . . . .

(2) Liability coverage of not less than $10,000 for all damages arising out of injury to or destruction of property . . . .

(b) At the option of the owner, each insurer shall: . . . .

(1) Offer medical payment coverage up to $15,000 . . . .

(2) Offer an income disability plan[.]

(We note Part V relating to Motorcycle and Motor Scooters was replaced in 1989 by Article 10G. The distinction between underinsured coverage for motor vehicles and motorcycles has remained intact.)

The legislature commented that the difference in the requirements for motorcycle and motor vehicle insurance was prompted by the following concerns expressed in Senate Conference Committee Report No. 49 (1985):

The purpose of this bill was to remove motorcycles and motor scooters from the requirements of Chapter 294, Hawaii Revised Statutes, the Motor Vehicle Accident Reparations Act . . . .

This bill would allow persons to operate motorcycles and motor scooters on public streets without the necessity of obtaining and maintaining no–fault motor vehicle insurance. However, in order to afford protection to the general public from the negligent or reckless operation of motorcycles and motor scooters, the bill would require insurance coverage for bodily injury to others . . . . and property damage insurance . . . .

In effect, the bill would allow persons to operate motorcycles and motor scooters without insurance coverage for personal injuries to themselves, or for their wage

loss or medical expenses. Further, an owner or operator of a motorcycle or motor scooter who is involved in an accident with an insured motor vehicle would not be able to collect no–fault benefits from the insurer of the insured motor vehicle.

Your Committee recognizes the problem faced by owners and operators of motorcycles and motor scooters with respect to high no–fault insurance premium rates. This bill is intended to afford some measure of relief to such persons. Sen. Conf. Comm. Rep. No. 49, in 1985 Senate Journal, at 876.

The rationale behind this disparate treatment of motorcycles and motor vehicles is obvious. Motorcycle riders consent to an inherently more dangerous risk because they are less protected on the roadways than those in automobiles. This greater risk is reflected in the higher premiums they must pay for insurance.

One of the objectives of the no–fault statutes was to minimize insurance costs while providing adequate coverage to those who become injured. In adding the requirement that underinsured coverage be offered to motor vehicle owners, the legislature stated:

The purpose of this bill is to provide for an increase in the no–fault benefit amounts and the liability and uninsured coverage amounts under the no–fault law, and to further provide a new optional "underinsured" motorist coverage under said no–fault law. The purpose of this bill is in line with the overall intent of the no–fault law to provide speedy and adequate protection to persons injured in motor vehicle accidents at the least possible cost. Sen. Stand. Comm. Rep. No. 689, in 1985 Senate Journal, at 1181–82.

Based on the foregoing discussion, the legislature enacted no–fault laws to provide adequate coverage at the lowest possible cost. For the same reason, the legislature generally exempted

motorcycles from no–fault insurance requirements and did not require insurers to offer the same coverage, specifically underinsured coverage, for motorcycles as it did for motor vehicles.

*Carleton B. Reid* (*James V. Myhre* with him on the brief of Reid, Richards & Miyagi, formerly Davis, Reid & Richards) for plaintiff–appellant.

*Christopher S. Bouslog* (*Benjamin L. Carroll, III* with him on the brief of McKenzie, Trecker & Fritz) for defendant–appellee.