[No. B079038. Second Dist., Div. Three. Mar. 29, 1994.]

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
JOHN SOLTERO, Real Party in Interest.

COUNSEL

Knapp, Petersen & Clarke and Peter J. Senuty for Petitioner.

No appearance for Respondent.

No appearance for Real Party in Interest.

OPINION

CROSKEY, J.—

### INTRODUCTION

Petitioner, State Farm Mutual Automobile Insurance Company (State Farm), seeks a writ of mandate directing the respondent court to vacate an order compelling arbitration of an uninsured motorist claim filed by its insured, plaintiff John Soltero (Soltero). The insurer of the tortfeasor in Soltero's underlying action became insolvent after suit was filed against the tortfeasor and more than one year after the subject accident. State Farm contends, pursuant to statute and the insurance policy, there was no uninsured motorist coverage for Soltero's damages due to the fact the tortfeasor's insurer did not become insolvent for more than one year after the accident.

State Farm's petition raises two issues: (1) should the arbitrator or the court decide the question of the effect of the insolvency of the tortfeasor's insurer upon uninsured motorist coverage; and (2) does the undisputed fact that the tortfeasor's insurer became insolvent more than one year after the accident preclude coverage even when the insured commenced an action against the tortfeasor within one year of the accident?

We issued an alternative writ on October 21, 1993, and set the matter for hearing. Upon consideration of the pleadings and oral presentations, we find that the trial court erred in failing to consider the issue of coverage before ordering arbitration. In addition, the undisputed fact that the tortfeasor's insurer did not become insolvent until more than one year after the accident determines the conclusion that there was no uninsured motorist coverage for the accident and thus no right to arbitration. We therefore issue a peremptory writ.

### BACKGROUND

On December 18, 1989, Soltero was involved in an accident with Ahmad Shihadah Nassman who was driving a truck in the course of his employment.

The truck was owned by Nassman's employer, Coast Club Services, Inc. (Coast) and insured by Northern Commercial & Fire Insurance Company (Northern). Soltero filed a personal injury action against Nassman and Coast on September 14, 1990. The case was set for trial on March 30, 1992.

However, before the case could be tried, the Insurance Commissioner ordered Northern into liquidation. This occurred on December 11, 1991, and Coast's attorney was advised of the liquidation order on February 10, 1992, in a letter from the Department of Insurance. Coast's attorney in turn advised Soltero's attorney of Northern's insolvency on February 18, 1992. At a settlement conference held on March 2, 1992, Soltero and Coast agreed that Soltero would drop his claim against Coast if Soltero recovered uninsured motorist benefits under his State Farm policy.

Soltero demanded in writing that State Farm settle his bodily injury claim for the uninsured motorist policy limits of $30,000, plus $3,962.46 for property damage. State Farm responded that it was investigating the claim but that it was questionable whether the tortfeasor Nassman was an uninsured motorist since his insurer, Northern, became insolvent over one year after the date of the accident. Subsequently, through counsel, the parties disputed the issue of coverage.

On or about July 20, 1993, Soltero petitioned the respondent court to compel arbitration of a dispute with State Farm, based upon the arbitration provision for uninsured motorist coverage in his automobile insurance policy.

The petition cited the following language:

"Deciding Fault and Amount Under Coverage U [Uninsured Motor Vehicle Coverage]

"Two questions must be decided by agreement between the *insured* and us:

"1. Is the *insured* legally entitled to collect damages from the owner or driver of the *uninsured motor vehicle*; and

"2. If so, in what amount?

"If there is no agreement, upon written request of the *insured* or us, these questions shall be decided by arbitration as provided by § 11580.2 of the California Insurance Code. The arbitration judgment may be filed in any court having jurisdiction. . . ." (Italics in original policy.)

State Farm opposed the petition, arguing the matter was not subject to arbitration due to noncoverage of the uninsured motorist claim. The respondent court granted the petition to compel arbitration, and State Farm filed the instant petition for relief.[1]

DISCUSSION

### 1. The Role of the Court

■ Code of Civil Procedure section 1281.2 prescribes and limits the power of the superior court in passing upon a petition to compel arbitration. (*Freeman* v. *State Farm Mut. Auto. Ins. Co.* (1975) 14 Cal.3d 473, 479 [121 Cal.Rptr. 477, 535 P.2d 341] [hereinafter, *Freeman*].) Except in limited circumstances not relevant here, the court shall order the parties to arbitration "if it determines that an agreement to arbitrate the controversy exists . . . ." (Code Civ. Proc., § 1281.2.)

"The clear purpose and effect of section 1281.2 is to require the superior court to determine in advance whether there is a duty to arbitrate the controversy which has arisen. The performance of this duty necessarily requires the court to examine and, to a limited extent, construe the underlying agreement." (*Freeman, supra*, 14 Cal.3d at p. 480; *United Transportation Union* v. *Southern Cal. Rapid Transit Dist.* (1992) 7 Cal.App.4th 804, 808 [9 Cal.Rptr.2d 702].)

Although every intendment will be indulged to give effect to this favored method of resolving disputes, the parties to an arbitration agreement are free to delineate the scope of issues subject to the arbitrator's powers. ". . . [J]udicial review is thus strictly limited to a determination of whether the party resisting arbitration in fact agreed to arbitrate. [Citations.]" (*Painters Dist. Council No. 33* v. *Moen* (1982) 128 Cal.App.3d 1032, 1037 [181 Cal.Rptr. 17], fn. omitted.)

"There is indeed a strong policy in favor of enforcing agreements to arbitrate, but there is no policy compelling persons to accept arbitration of

---

[1] In granting the petition, the trial court stated, in part, "The question of legal entitlement must include the applicability of the definition of uninsured motorist. In the case of *Jordan* v. *Pacific Auto Ins. Co.* (1965) 232 Cal.App.2d 127 [42 Cal.Rptr. 556], the Court stated that the question of whether the driver of the other auto involved in collection [*sic*: the collision] had been insured was arbitrable. Therefore, question of insolvency and when it occurred should also be arbitrated, as included in the term 'legally entitled.' The case of *Campbell* v. *State Farm Mut. Auto. Ins. Co.* (1989) 209 Cal.App.3d 871 [257 Cal.Rptr. 542], states that doubtful language is resolved in favor of the insured."

controversies which they have not agreed to arbitrate and which no statute has made arbitrable." (*Freeman, supra*, 14 Cal.3d at p. 481.)

*Jordan* v. *Pacific Auto. Ins. Co.* (1965) 232 Cal.App.2d 127 [42 Cal.Rptr. 556], cited by the respondent court, is distinguishable from Soltero's case. The arbitration clause in *Jordan* was broad,[2] and the insured challenged the arbitrator's jurisdiction only after demanding arbitration and losing, when the company placed in issue the uninsured status of the tortfeasor. "Having invoked arbitration, [insured] agreed to be bound by the rules of the American Arbitration Association." (*Id.*, at p. 131.)

The respondent's court reliance upon *Jordan* was misplaced.

2. *The Policy Provisions*

The insurance policy includes the arbitration provision quoted in Soltero's petition to compel arbitration (*ante*) and defines "uninsured motor vehicle" for purposes of Coverage U, as follows:

"1. a land motor vehicle, the ownership, maintenance or use of which is:

"a. not insured or bonded for bodily injury liability at the time of the accident; or

"b. insured or bonded for bodily injury liability at the time of the accident; but

"(1) the limits of liability are less than required by the financial responsibility act of the state where your car is mainly garaged; or

"(2) the insuring company;

"(a) denies coverage;

"(b) refuses to admit coverage except conditionally or with reservation; or

"(c) is or becomes insolvent within one year of the accident[.]"

---

[2]The policy provided, " 'If such person making claim hereunder and the company do not agree that such person is legally entitled to recover damages from the owner or operator of an uninsured automobile because of bodily injury to the insured, or do not agree as to the amount of payment which may be owing under this Part, then upon written demand of either, the matter or matters upon which such person and the company do not agree shall be settled by Arbitration . . . .' " (232 Cal.App.2d at p. 130.)

### 3. *The Insurance Code*

The Insurance Code requires the inclusion of uninsured motorist coverage in all automobile policies. (Ins. Code, § 11580.2.)[3] Section 11580.2, subdivision (f) states, "The policy or an endorsement added thereto shall provide that the determination as to whether the insured shall be legally entitled to recover damages, and if so entitled, the amount thereof, shall be made by agreement between the insured and the insurer or, in the event of disagreement, by arbitration. . . ."

The word "damages" in section 11580.2, subdivision (f) "means the damages which the insured is entitled to recover from the uninsured motorist, and the statute thus requires arbitration of two issues only: (1) whether the insured is entitled to recover against the uninsured motorist and (2) if so, the amount of damages. (*Freeman* v. *State Farm Mut. Auto. Ins. Co.* (1975) 14 Cal.3d 473, 480 []; *Harrison* v. *California State Auto. Assn. Inter-Ins. Bureau* (1976) 56 Cal.App.3d 657, 661 [].)" (*Furlough* v. *Transamerica Ins. Co.* (1988) 203 Cal.App.3d 40, 45 [249 Cal.Rptr. 703].) In *Furlough*, the court reasoned that where the policy essentially restates the statutory language, arbitration is limited to these issues, and held, in that case, arbitration did not include the issue of policy limits nor the amount the insurance company was obligated to pay the insured under the policy.

Section 11580.2 defines "uninsured motor vehicle" as "a motor vehicle with respect to the ownership, maintenance or use of which there is no bodily injury liability insurance or bond applicable at the time of the accident, or there is the applicable insurance or bond but the company writing the insurance or bond denies coverage thereunder or refuses to admit coverage thereunder except conditionally or with reservation . . . ." (§ 11580.2, subd. (b).)

Of significance to the instant dispute, the section also defines "uninsured motor vehicle" to mean "an insured motor vehicle where the liability insurer thereof is unable to make payment with respect to the legal liability of its insured within the limits specified therein because of insolvency. An insurer's solvency protection *shall be applicable only to accidents occurring during a policy period in which its insured's motor vehicle coverage is in effect where the liability insurer of the tortfeasor becomes insolvent within one year of the accident*. . . ." (Italics added.) To the extent of payment, the insurer is entitled to any proceeds recoverable from the assets of the insolvent insurer through any settlement or judgment against the insolvent insurer. (§ 11580.2, subd. (b)(2).)

---

[3]All further statutory references are to the Insurance Code, unless otherwise indicated.

In *Freeman*, the California Supreme Court clarified and reemphasized the role of the court upon a petition to compel arbitration of an uninsured motorist claim. Section 11580.2, subdivision (i), sets forth conditions precedent to accrual of an action to an insured under a policy, one of which must be fulfilled within one year from the date of the accident.[4] The insured brought action against a named defendant and certain Does, who were not served and did not appear at trial, arising out of a three-vehicle accident. Judgment was for the named defendant. Later, the insured sought to compel arbitration of his claim against an unknown motorist allegedly involved in the accident. Affirming the trial court's finding the petition to be untimely, the court held it was for the trial court, not the arbitrator, to decide if the insured had waived his right to compel arbitration by failure to comply with this "statute of limitations." (*Freeman, supra*, 14 Cal.3d at p. 484.) The issue "is logically and legally prior to any consideration by the arbitrator of those other issues . . ." (*Id.*, at p. 485.)

Similarly, the issue of the insolvency of the tortfeasor's insurer, a prerequisite to uninsured motorist coverage based upon insolvency, must be determined by the court before the issues of the tortfeasor's liability and the insured's damages are arbitrable.

The State Farm policy expressly incorporates the one-year insolvency limitation set forth in the Insurance Code. This distinguishes this case from *Utah Property & Casualty Ins. etc. Assn. v. United Services Auto. Assn.* (1991) 230 Cal.App.3d 1010 [281 Cal.Rptr. 917], which pointed out that the statutory provision was merely a minimum amount of required coverage. In the case of a policy which did not specify the one-year limitation, the one-year limitation in section 11580.2, subdivision (b)(2) was not incorporated in the policy so as to limit coverage otherwise afforded by the policy. (230 Cal.App.3d at p. 1021.)

Because the State Farm policy incorporates the one-year requirement of the statute, the policy is clearly limited to insurance insolvency within the one year following the accident. (See also dictum, *Interinsurance Exchange v. Garcia* (1984) 160 Cal.App.3d 419, 425 and fn. 5 [206 Cal.Rptr. 621], as applied to post-1984 self-insurer insolvency.)

---

[4] Section 11580.2, subdivision (i) provides: "No cause of action shall accrue to the insured under any policy or endorsement provision issued pursuant to this section unless one of the following actions have [*sic*] been taken within one year from the date of the accident:

"(1) Suit for bodily injury has been filed against the uninsured motorist, in a court of competent jurisdiction.

"(2) Agreement as to the amount due under the policy has been concluded.

"(3) The insured has formally instituted arbitration proceedings."

### 4. *Application of the Policy Language and Insurance Code to Soltero's Arbitration Petition*

The facts, being undisputed, require a finding of noncoverage for Soltero's accident with Coast's vehicle on December 18, 1989. Coast's insurer was ordered liquidated by the Insurance Commissioner on December 11, 1991, *more than one year later.*

In the trial court,[5] Soltero argued that coverage may be based upon the belated insolvency, in that at that point, the tortfeasor's insurer "denies coverage" within the meaning of section 11580.2, subdivision (b). In *Katz* v. *American Motorist Ins. Co.* (1966) 244 Cal.App.2d 886 [53 Cal.Rptr. 669], the court equated insolvency with the existing statutory definition of "uninsured motor vehicle," which made no mention of insolvency. The one-year insolvency limitation was enacted thereafter, effective 1968. (Stats. 1967, ch. 1654, p. 3989.)[6]

In light of the clear limitation set forth in the statute as applied to insolvency, there is no basis for subverting the legislative intent by the application of another portion of the statute which would extend insurer's liability for the insolvency of other insurers beyond one year.[7]

---

[5]Soltero has submitted no opposition to State Farm's petition for writ of mandate.

[6]One commentator, Paul Eisler, questions the intent of the Legislature: "A reading of the statute . . . suggests that the adverse vehicle is deemed to be an insured vehicle in the event the liability insurer of the tortfeasor becomes insolvent more than one year after the accident." (1 Eisler, Uninsured Motorist Law (4th ed. 1986) § 8.70, p. 8-40.)

He comments, "It does not stand to reason that the Legislature intended such an illogical and unjust result. As we have seen, the courts have repeatedly stressed the remedial nature of the uninsured motorist law, with its obvious intent to compensate innocent insureds for their injuries, and to insure them of minimum coverage regardless of whether the guilty driver was insured. See, [1.15]. Whenever liability fastens upon the tortfeasor, his insurance company is supposed to protect the innocent victim and pay all damages suffered. If it pays, there is no need for uninsured motorist coverage. If it does not pay because of its insolvency, the injured party should not be the one who suffers because of the fortuitous event that the insurance carrier went bankrupt more than one year before or after the date of the accident. It is respectfully submitted that in the event the tortfeasor's insurance company becomes insolvent either before or after one year of the accident, it 'denies coverage' within the meaning of Section 11580.2(b), and the adverse vehicle qualifies as an 'uninsured motor vehicle' under the holding of *Katz* [v. *American Motorist Ins. Co.* (1966) 244 Cal.App.2d 886]." (1 Eisler, Uninsured Motorist Law, *supra*, § 8.70, P. 8-40.)

[7]As observed by the court in *Interinsurance Exchange* v. *Garcia, supra*, 160 Cal.App.3d 419, "If someone is injured by an insured motorist whose insurance company becomes insolvent more than one year after the accident, he can recover from CIGA." (*Id.*, at pp. 426-427.) However, it appears that Northern was not registered in California and thus California Insurance Guarantee Association protection may not apply.

## DISPOSITION

The alternative writ is discharged and a peremptory writ of mandate shall issue directing the trial court to vacate its order granting Soltero's petition compelling arbitration and to enter a new and different order denying the petition.

Klein, P. J., and Kitching, J., concurred.