889 P.2d 67

**NATIONAL UNION FIRE INSURANCE COMPANY and American International Adjustment Company, Inc., Plaintiffs–Appellees,**

v.

**Robert REYNOLDS, Defendant–Appellant.**

**No. 16091.**

Intermediate Court of Appeals of Hawai'i.

Feb. 13, 1995.

Magali V. Richter and Hilary Benson Gangnes (McKenzie, Trecker & Fritz, of counsel), on the briefs, Honolulu, for defendant-appellant.

Carleton B. Reid and John T. Hassler (Reid, Richards & Miyagi, of counsel), on the briefs, Honolulu, for plaintiffs-appellees.

Before BURNS, C.J., ACOBA, J., and PERKINS, Circuit Judge, in place of WATANABE, Associate Judge, recused.

ACOBA, Judge.

This appeal is from an April 24, 1992, order granting summary judgment and September 23, 1992 judgment in favor of Plaintiffs–Appellees National Union Fire Insurance Company and American International Adjustment Company, Inc., (collectively National Union) and against Defendant–Appellant Robert Reynolds (Defendant) on National Union's contention that an automobile owned by its insured was not an "underinsured motor vehicle" under its insured's automobile insurance policy so as to afford Defendant, insured's passenger, "underinsured" benefits. We agree and so affirm the order and judgment.

Summary judgment is appropriately granted " 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Amfac, Inc. v. Waikiki Beachcomber Inv. Co.*, 74 Haw. 85, 104, 839 P.2d 10, 22 (1992) (quoting *Gossinger v. Association of Apartment Owners of The Regency Ala Wai*, 73 Haw. 412, 417, 835 P.2d 627, 630 (1992)).

The material facts are not in dispute.

On October 3, 1987, Defendant, a passenger in an automobile driven by Mark Smith (Smith), was injured when Smith's au-

tomobile collided with another vehicle. Smith was insured by National Union. National Union's automobile insurance policy provided Smith with both liability[1] and underinsured motorist[2] insurance coverages.[3] Defendant filed a claim for benefits under the liability and underinsured coverages of Smith's policy. In addition, Defendant filed a claim for benefits under the underinsured motorist provision of his own automobile insurance policy, also issued by National Union.

National Union paid Defendant the maximum amount for bodily injury benefits under Smith's liability coverage and under Defendant's own underinsured coverage but denied Defendant's claim for underinsured benefits under Smith's policy. Defendant sought to resolve the denial of underinsured coverage under Smith's policy by requesting arbitration under the arbitration clause in Smith's policy.

Rather than proceeding to arbitration, National Union filed a complaint for declaratory relief against Defendant, alleging that he was not entitled to underinsured benefits under Smith's policy. National Union moved for summary judgment on the ground that Smith's policy provisions barred recovery of such benefits because Smith's automobile was not an "underinsured vehicle" with respect to Smith or passengers such as Defendant and because such provisions were not void as against public policy under *Kang v. State Farm Mut. Auto. Ins. Co.*, 72 Haw. 251, 815 P.2d 1020 (1991).

Defendant opposed summary judgment on the basis that (1) the question of coverage was subject to arbitration under the arbitration provisions of the policy, (2) the express language excluding underinsured coverage in *Kang* was not in the policy, and (3) a policy provision excluding a vehicle owned by the insured or regularly used by the insured or the insured's family from underinsured coverage, a so-called "owned vehicle exclusion," was void because a similar provision was held void under the Hawai'i uninsured motorist[4] statute in *Kau v. State Farm Mut. Auto. Ins.*, 58 Haw. 49, 564 P.2d 443 (1977). After summary judgment was granted, Defendant appealed.

## I.

We consider first, Defendant's contention that the arbitration clause in Smith's policy required the dispute to be arbitrated. The policy in pertinent part provides:

*Arbitration*

If we and a *covered person* do not agree:

1.  Whether that person is legally entitled to recover damages under this [underinsured motorist] endorsement; or

2.  as to the amount of damages; either party may make a written demand for arbitration.

(Emphasis in original.)

"*Covered person*" as used in this endorsement means:

. . . .

2.  An [sic] other person *occupying your covered auto*.

(Emphasis in original.)

It is not disputed that Defendant was a "covered person" because he was an occupant of the automobile insured under the policy. Being a covered person, Defendant could invoke the arbitration clause in any

---

1.  The purpose of liability coverage is to protect "the insured against damages which he [or she] may be liable to pay to other persons by virtue of his [or her] own actions." 1 R. Long, *The Law of Liability Insurance* § 1.01[1], at 1–3 (1994).

2.  An aim of underinsured motorist coverage is to provide additional indemnification for the insured person in accidents involving insured motorists with liability coverages that were not sufficient to provide complete compensation for the insured person. 3 A. Widiss, *Uninsured and Underinsured Motorist Insurance* § 31.4, at 7 (2d ed. 1992).

3.  Coverage refers to "the 'assumption of risk of occurrence of the event insured against before its occurrence.'" *Continental Ins. Co. v. Paccar, Inc.*, 26 Wash.App. 850, 863, 614 P.2d 675, 684 (1980) (quoting *Ryan v. Cuna Mut. Ins. Soc'y*, 84 Wash.2d 612, 615, 529 P.2d 7, 9 (1974)).

4.  The objective of uninsured motorist coverage is to enable the insured "to recover from his [or her] own insurer for injuries caused by an uninsured motorist." 1 R. Long, *supra*, § 3.02[3], at 3–9.

dispute. Focusing on the words "legally entitled to recover damages," he asserts that they encompass the ascertainment of underinsured motorist coverage, as opposed to a limited factual determination of the underinsured driver's fault.

The foregoing provision is substantially the standard form used for underinsured motorist coverage:

The standard form coverage terms for the underinsured motorist insurance state that either party may make a written demand for arbitration in the event the claimant and the insurer do not agree:

1. Whether that person is legally entitled to recover damages under this endorsement; or
2. As to the amount of damages.

3 A. Widiss, *Uninsured and Underinsured Motorist Insurance* § 45.3, at 134 (2d ed. 1992). A few jurisdictions, including Pennsylvania[5] and Connecticut[6] have adopted a broad approach to such provisions by relegating all issues concerning recovery under the policy to arbitration. Annotation, *What Issues are Arbitrable Under Arbitration Provision of Uninsured Motorist Insurance*, 29 A.L.R.3d 328, 337 (1970) (Annotation).[7] One jurisdiction has adopted a "reasonably debatable" test, "and allow[ed] arbitration of the scope of the arbitration clause where ... the parties' intention as to its scope is reasonably debatable." *Dunshee v. State Farm*

Mut. Auto. Ins. Co., 303 Minn. 473, 482, 228 N.W.2d 567, 572 (1975).

Our review indicates, however, that most courts hold that arbitration is generally limited to issues of the offending motorist's fault or liability to the covered person, and the amount of damages resulting from the accident, leaving issues relating to policy coverage to the courts. Annotation at 339. For example, in New York, the provision "submits to arbitration the issues of fault and damages, but it does not include the issue of compliance with a condition precedent to coverage." *United States Fidelity & Guar. Co. v. Mitchell,* 168 A.D.2d 941, 942, 564 N.Y.S.2d 894, 895 (1990) (citing *Rosenbaum v. American Sur. Co.,* 11 N.Y.2d 310, 314, 229 N.Y.S.2d 375, 378, 183 N.E.2d 667, 668, (1962) ("arbitration clause was particular, not general")). California adopts a similar approach. *State Farm v. Superior Court,* 23 Cal.App. 4th 1297, 1304, 28 Cal.Rptr.2d 711, 715 (1994) ("the issue of the insolvency of the tortfeasor's insurer, a prerequisite to uninsured motorist coverage based upon insolvency, must be determined by the court before the issues of the tortfeasor's liability and the insured's damages are arbitrable"); *Furlough v. Transamerica Ins. Co.,* 203 Cal. App.3d 40, 45, 249 Cal.Rptr. 703, 706 (1988) (arbitration limited to issues of liability). Many other states affirm limitations on the arbitrator's jurisdiction.[8] 2 A. Widiss,

---

**5.** *Brennan v. General Accident Fire & Life Assurance Corp.*, 524 Pa. 542, 549, 574 A.2d 580, 583 (1990) ("arbitrator has the authority to decide all matters necessary to dispose of the claim"). However, even those jurisdictions which have adopted an expansive interpretation of the arbitration clause have had to resort to judicial review and enforcement of some coverage issues. Courts recognize a public policy exception to an arbitrator's exclusive jurisdiction. *Balboa Ins. Co. v. Amity*, 301 Pa.Super.Ct. 77, 81, 446 A.2d 1343, 1345 (1982) (courts will take jurisdiction of disputes challenging an insurance provision as contrary "to a constitutional, legislative, or administrative mandate, or against public policy, or unconscionable").

**6.** *Lane v. Aetna Casualty & Sur. Co.*, 203 Conn. 258, 263, 524 A.2d 616, 620 (1987) (" 'the arbitration panel [has] the function of determining, in the first instance, all issues as to coverage under automobile liability insurance policies containing uninsured motorist clauses providing for arbitration' " (emphasis omitted) (quoting *Oliva*

*v. Aetna Casualty & Sur. Co.*, 181 Conn. 37, 42, 434 A.2d 304 (1980)) (interpreting the purpose and effect of *Conn.Gen.Stat.* § 38–175c(a)(1) (1985))).

**7.** Although the title of the annotation refers to uninsured motorists insurance, the annotation includes underinsured motorists endorsements containing the same standard arbitration clause. *See* Annotation, *What Issues are Arbitrable Under Arbitration Provision of Uninsured Motorist Insurance*, 29 A.L.R.3d 328 (Supp.1994).

**8.** The list of states approving limitation of the arbitrator's jurisdiction include "Arizona, California, Colorado, ... Florida, Hawaii [Hawai'i], Illinois, Indiana, Michigan, Minnesota, New Jersey, New Mexico, Oregon, Rhode Island, Tennessee, and Washington[.]" 2 A. Widiss, *supra*, § 24.4, at 277. Hawai'i was included on the list based on a ninth circuit court opinion, *State Farm Mut. Auto. Ins. Co. v. Fernandez,* 767 F.2d 1299 (9th Cir.1985). However, at the time, the

§ 24.4, at 277. The United States Court of Appeals for the Ninth Circuit, faced with this issue in an appeal from the United States District Court for the District of Hawai'i, held that coverage issues are not subject to arbitration. *State Farm Mut. Auto. Ins. v. Fernandez,* 767 F.2d 1299, 1301 (9th Cir. 1985).

We acknowledge that "the proclaimed public policy of our legislature is to encourage arbitration as a means of settling differences and thereby avoid litigation." *Gregg Kendall & Assoc., Inc. v. Kauhi,* 53 Haw. 88, 93, 488 P.2d 136, 140 (1971).

■ But, we believe our decisions are most consistent with holdings of jurisdictions which invest courts with the obligation to determine coverage issues. For, it has been held that " 'the scope of . . . [an agreement to arbitrate is an] issue[ ] that a court must decide.' " *Koolau Radiology, Inc. v. Queen's Medical Center,* 73 Haw. 433, 447, 834 P.2d 1294, 1301 (1992) (quoting 6A *Corbin on Contracts* § 1444A (1962)). Therefore, "[a]s a general rule, [our] courts should determine whether a dispute is subject to arbitration." *Bateman Constr., Inc. v. Haitsuka Bros., Ltd.,* 77 Hawai'i 481, 485, 889 P.2d 58, 62 (1995). It follows, thus, that "the question of arbitrability is usually an issue to be decided by the courts, '[u]nless the parties clearly and unmistakably provide otherwise[.]' " *Bateman,* at 485, 889 P.2d at 62 (quoting *FSC Sec. Corp. v. Freel,* 14 F.3d 1310, 1312 (8th Cir.1994)).

■ Courts should decide the scope of an arbitration clause because "[i]t is well established that the construction of a contract, where material facts are undisputed, is a question of law for the court's determination." *Norfleet v. Safeway Ins. Co.,* 144 Ill. App.3d 838, 842, 98 Ill.Dec. 598, 601, 494 N.E.2d 720, 723 (1986).

■ The arbitration provision in question is a standard one. Although "standard," the provision has been susceptible to differing

interpretations. Yet, an interpretation which aligns us with most jurisdictions would also be consistent with the "general rule" adopted by our supreme court. Furthermore, while the standard language may be broad enough to envelop more than one interpretation, that is far from providing "clearly and unmistakably," that coverage issues are to be decided by arbitration rather than by the courts.[9] Consequently, we hold, that under the standard arbitration clause in the underinsured motorist provision, arbitration on the question of whether the insured was "legally entitled to recover damages," is limited to a determination of the offending motorist's fault and his or her resulting liability to the person covered under the policy, and does not include the ascertainment of whether underinsured coverage applies under any particular circumstance.

Holding that the issue of underinsured motorist coverage is not referable to arbitration, but is one to be decided by the courts, we discuss the other issues raised in the case.

## II.

Because there are no material facts in dispute, the question is whether the circuit court correctly ruled that National Union was entitled to judgment "as a matter of law." *Cf. Norfleet v. Safeway Ins. Co.,* 144 Ill.App.3d 838, 842, 98 Ill.Dec. 598, 601, 494 N.E.2d 720, 723 (1986) (when material facts are undisputed, construction of contract is a question of law).

We review, then, National Union's contention that the policy belonging to Smith excluded underinsured motorist coverage on the automobile occupied by Defendant. The policy's pertinent provisions state:

### DEFINITIONS

Throughout this policy, "you" and "your" refer to the "named insured" shown in the Declarations. . . .

. . . .

---

specific issue of the scope of the arbitrator's jurisdiction had not been addressed by a Hawai'i state appellate court. This case presents the first opportunity to do so.

9. Obviously, the parties may clearly and unmistakably state that coverage questions should be subject to arbitration if they choose to do so. *Bateman Constr., Inc. v. Haitsuka Bros., Ltd.,* —— Hawai'i at ——, 889 P.2d at 62.

*PART C: UNDERINSURED MOTOR-ISTS COVERAGE—HAWAII [HAWAI'I]*

We will pay damages which a *covered person* is legally entitled to recover from the owner or operator of an *underinsured motor vehicle* because of bodily injury:

    1. Sustained by a *covered person;* and

    2. Caused by an accident.

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the *underinsured motor vehicle.*

. . . .

However, *"underinsured motor vehicle"* does not include any vehicle or equipment:

. . . .

    2. Owned by or furnished or available for the regular use of you or any *family member.*

(Emphasis in original.)

■ The exclusion of the insured's vehicle from coverage is referred to as the "owned vehicle exclusion." *Methven–Abreu v. Hawaiian Ins. & Guar. Co.,* 73 Haw. 385, 389, 834 P.2d 279, 282 (1992).

■ As indicated previously, Defendant was a "covered person" under the policy. However, under the policy's terms, an "underinsured motor vehicle" driven by the offending operator "does not include any vehicle . . . [o]wned by or furnished or available for the regular use of [the named insured,]" here, Smith.

Because Smith was the named insured, his vehicle was excluded from the definition of "underinsured motor vehicle." By virtue of this policy definition, Defendant's injuries did not result from his involvement with the operator of an "underinsured motor vehicle." That being the case, Defendant was precluded from underinsured motorist benefits because his right to benefits was contingent upon his injuries arising out of the "owner-ship, maintenance, or use" of an "underinsured motor vehicle."

We hold that such an exclusion is permissible under *Kang v. State Farm Mut. Auto. Ins. Co.,* 72 Haw. 251, 815 P.2d 1020 (1991).

■ At the time of the accident, the insurer was required to offer underinsured motorist coverage, that is, "coverage for loss resulting from bodily injury or death suffered by any person legally entitled to recover damages from owners or operators of underinsured motor vehicles." HRS § 431–448(b) (1985) (repealed 1987).[10] The purpose of the coverage is to "provide protection, through voluntary insurance, for persons who are injured by underinsured motorists whose liability polices [sic] are inadequate to pay for personal injuries caused by motor vehicle accidents." Hse.Stand.Comm.Rep. No. 1150, in 1988 House Journal, at 1248.

In *Kang,* Lucy Kang, a passenger in an automobile driven by Agnes Kim, was seriously injured when Kim's vehicle struck a concrete wall. Kang sought recovery of benefits for her personal injuries under both liability and underinsured motorist coverages of Kim's automobile insurance policy. The insurance company paid Kang the maximum benefits under the liability coverage but, like the insurance company here, refused to pay underinsured motorist benefits under the same policy. Its refusal rested on an exclusion barring underinsured motorist benefits for a vehicle already insured under the liability coverage of the policy. *Kang,* 72 Haw. at 252, 815 P.2d at 1020.

■ Reviewing the legislative objective, the Hawai'i Supreme Court held that "insurance policy exclusions prohibiting dual recovery of liability and underinsured motorist benefits under a single policy" do not violate the underinsured motor vehicle insurance statute. *Id.* at 255, 815 P.2d at 1022. This holding stemmed from the premise that recovery "under both the liability and underinsur[ed] provisions of the . . . policy, . . . would in effect transform underinsured motorist coverage into liability coverage and

**10.** Under the current insurance code, the insurer is still obligated to offer underinsured motorist coverage, and the definition of underinsured mo-torist coverage is identical to Hawai'i Revised Statutes (HRS) § 431–448(b) (1985) (repealed 1987). HRS § 431:10C–301(b)(4) (Comp.1993).

thus create a duplication of liability benefits[,]" a result inconsistent with legislative intent. *Id.* at 256, 815 P.2d at 1022. Hence, automobile insurance policies such as the one here may bar dual recovery under both liability and underinsured coverages without violating the underinsured motorist statute.

## III.

### A.

Defendant attempts to distinguish *Kang v. State Farm Mut. Auto. Ins. Co.,* 72 Haw. 251, 815 P.2d 1020 (1991) from this case, maintaining that the exclusionary clause in *Kang* was not the same as the clause in the instant policy. The *Kang* exclusion stated, " 'An *underinsured motor vehicle* does not include a land motor vehicle ... insured under the liability coverage of this policy[.]' " *Id.* at 252, 815 P.2d at 1021 (emphasis in original). While that policy expressly excluded underinsured coverage on a motor vehicle also insured under the liability endorsement of the policy, the intent to exclude a vehicle owned by or available for use by the named insured in the instant case is likewise clear.

We believe such exclusionary clauses are valid. For, the gravamen of *Kang* is that "[t]he language of the underinsured motorist statutes does not suggest in any way that the legislature intended to mandate that a claimant be entitled to a dual recovery of liability and underinsured motorist benefits under a single policy." *Id.* at 254, 815 P.2d at 1022. The court reasoned that such entitlement "would in effect transform underinsured motorist coverage into liability coverage[.]" *Id.* at 256, 815 P.2d at 1022. That transformation was disallowed by the court because of its concern that dual recovery under the same policy would "transform the inexpensive underinsured motorist coverage into the more expensive liability coverage. Consequently, insurers would undoubtedly be compelled to increase the premiums for underinsured motorist coverage, thereby frustrating the legislative objective of optional protection at the least possible cost." *Id.* at 261, 815 P.2d at 1025. We perceive no principled distinction between the exclusionary language in *Kang* and that in the instant case in light of *Kang's* controlling rationale.

### B.

Defendant also asserts that the policy permits recovery under the underinsured motorist coverage as well as liability coverage because the underinsured motorist endorsement provides that, "Any payment under this coverage will reduce any amount that person is entitled to recover under Part A [ (liability coverage) ] or Part B [ (uninsured motorist coverage) ] of this policy." Relying on this statement, Defendant maintains that the policy contemplates dual coverage.

Nevertheless, this provision, does not necessitate the conclusion that the policy allows dual coverage in all situations. The provision merely applies if and when payment of underinsured benefits is appropriate. Therefore, it does not contradict the provisions that restrict recovery under the underinsured motorist endorsement.

### C.

Finally, Defendant submits that the owned vehicle exclusion here is void because it is similar to the owned vehicle exclusion from uninsured insurance coverage held void as against public policy in *Kau v. State Farm Mut. Auto. Ins. Co.,* 58 Haw. 49, 564 P.2d 443 (1977) (per curiam). The exclusion in *Kau* stated:

> "This [uninsured motorist] insurance does not apply: ... (b) To bodily injury to an insured while occupying ... a land motor vehicle owned by the named insured or any resident of the same household, if such vehicle is not an owned motor vehicle[.]"

*Id.* at 50, 564 P.2d at 444. "An 'owned motor vehicle' [was] defined in the policy as 'the motor vehicle ... described in the declarations[.]' " *Id.* Although the insurer conceded the claimant was an "insured," it denied coverage because the vehicle involved in the accident was not described on the declaration page of the policy. *Id.,* at 50–51, 564 P.2d at 443–44.

Surveying the legislative history of the uninsured motorist statute,[11] the supreme court found that the legislature intended to provide protection to those injured by uninsured motorists and that a " 'claim becomes payable when the innocent victim shows that his [or her] claim is valid[.]' " *Id.* at 51, 564 P.2d at 444 (quoting Hse.Stand.Comm.Rep. No. 194, in 1965 House Journal, at 582). The court invalidated the owned vehicle exclusion because it "den[ied] [the claimant] the full protection of the statute." *Id.*

Recently, the supreme court reaffirmed its holding in *Kau* by setting aside an owned vehicle exclusion in another uninsured motorist policy. *Methven–Abreu v. Hawaiian Ins. & Guar. Co.,* 73 Haw. 385, 834 P.2d 279 (1992).

In *Methven–Abreu,* the insured was involved in a one-car accident while a passenger in her uninsured vehicle. She filed a claim for uninsured benefits under her husband's insurance policy. The insurer denied her claim under the owned vehicle exclusion which stated, " 'We do not provide Uninsured Motorists Coverage for bodily injury sustained by any person: (1) While *occupying* ... any motor vehicle owned by you or any *family member* which is not insured for this coverage under this policy.' " *Id.* at 395, 834 P.2d at 285 (emphasis in original). Applying *Kau,* the court held that the "owned vehicle exclusion clearly narrows the coverage [the insured] is entitled to receive under the [uninsured motorist] statute, and therefore the exclusion is void as against public policy." *Id.* at 396, 834 P.2d at 285–86.

The supreme court was presented with the question of whether *Kau* extends to underinsured motorist coverage in *National Union*

*Fire Ins. Co. v. Ragil,* 72 Haw. 205, 811 P.2d 473 (1991). It did not, however, reach that issue.[12]

But, the supreme court has not always found that an owned vehicle exclusion is void as against public policy. It has declined to extend *Kau* to invalidate an owned vehicle exclusion in a no-fault automobile insurance policy. *State Farm Mut. Auto. Ins. Co. v. Fermahin,* 73 Haw. 552, 564, 836 P.2d 1074, 1081 (1992). The court stated, "we decline to extend *Kau* ... [and] conclude that the owned vehicle exclusion contained in the policy is valid because it is consistent with HRS § 431:10C–305(d) and the legislative intent of Hawaii's [Hawai'i's] no-fault law.' " *Id.*

■ We are faced, accordingly, with the issue of whether the holding in *Kau* which nullified owned vehicle exclusions in uninsured motorist endorsements extends to underinsured motorist endorsements.

We hold it does not.

In a companion case to *Kang,* the driver of Kang's automobile sought a declaratory judgment to establish entitlement to underinsured motorist benefits. *Kim v. State Farm Mut. Auto. Ins. Co.,* 952 F.2d 314 (9th Cir. 1991). The ninth circuit court of appeals characterized the "dispute [as] whether the car Agnes Kim was driving was an 'underinsured motor vehicle.' " *Id.* at 315. Similar to the exclusion contested here, the owned vehicle exclusion in *Kim* stated that "the definition of an 'underinsured motor vehicle' [was] any automobile which is 'furnished for the regular use of you, your spouse or any relative.' " *Id.*

---

**11.** The uninsured motorist statute, HRS § 431–448(a) (repealed 1987), provides, in part:

  (a) No automobile liability or motor vehicle liability policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle, shall be delivered, issued for delivery, or renewed in this State ... unless coverage is provided therein or supplemental thereto ... for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sick-

ness, or disease, including death, resulting therefrom. ...

**12.** The court held that the claimant, who was riding a motorcycle when he was struck by another vehicle, was not covered under the underinsured provision because liability coverage did not include " 'any motorized vehicle having less than four wheels.' " *National Union Fire Ins. Co. v. Ragil,* 72 Haw. 205, 210, 811 P.2d 473, 476 (1991). The court based its decision on the different insurance requirements the legislature had enacted for motorcycles. *Id.* at 211–16, 811 P.2d at 476–78, *see also* HRS chapter 431:10G (Supp.1992).

The appeals court observed that "in the view of the Hawaii [Hawai'i] Supreme Court, there was in *Kang* not only an absence of public policy against State Farm's exclusionary clause, there *was a public policy supporting it.*" *Id.* at 316 (emphasis added). As did the appeals court, we believe that "[w]ere we to invalidate [the] ... exclusion ..., it would cause the very mischief that the Hawaii [Hawai'i] Supreme Court strove to avoid in *Kang.*" *Id.* at 316–17.

Additionally, one of the supporting cases cited by the Hawai'i Supreme Court in *Kang* expressly disallowed dual "coverage under both the liability and underinsured motorist provisions of an insurance policy" where an owned vehicle exclusion was involved. *Millers Casualty Ins. Co. v. Briggs,* 100 Wash.2d 1, 3, 665 P.2d 891, 892 (1983).[13] In approving the exclusion, the Washington Supreme Court set forth three reasons bolstering its holding:

"First, ... the injured party has not paid a premium for coverage to this insurer. Thus, there is no danger the insurer will gain a windfall if it is not forced to pay under both provisions of the policy. Second, unlike uninsured motorist coverage, the honoring of this kind of exclusion in underinsured motorist coverage does not leave the injured party completely without compensation. He [or she] has already received some compensation pursuant to the liability coverage of the policy. Third, assuming the injured party has automobile insurance of his [or her] own, he [or she] should be able to collect additional amounts as a result of that policy's underinsured motorist coverage.

*Millers,* 100 Wash.2d at 7, 665 P.2d at 894 (quoting Comment, *Washington's Underinsured Motorist Statute: Balancing the Interests of Insurers and Insureds,* 55 Wash. L.Rev. 819, 827 (1980)). These reasons provide support consistent with *Kang,* for upholding the owned vehicle exclusion.

Lastly, we believe any outcome relying on *Kau* would contravene the supreme court's holding in *Kang.* Admittedly, the legislature has stated that underinsured coverage is to be treated like uninsured coverage:

Underinsured motorist coverage would then be treated in the same manner that uninsured motorist coverage is presently treated, i.e., to provide protection, through voluntary insurance, for persons who are injured by underinsured motorists whose liability polices [sic] are inadequate to pay for personal injuries caused by motor vehicle accidents.

Hse.Stand.Comm.Rep. No. 1150, in 1988 House Journal, at 1248.

But, in the context of underinsured motorist coverage, we are bound by *Kang.* There, the exclusion of underinsured motorist benefits was sustained, even though, like Defendant here, Kang's "damages exceeded the policy limits received under [the offending motorist's] liability policy as well as from her own underinsured motorist coverage[.]" *Kang,* 72 Haw. at 253, 815 P.2d at 1021. The Hawai'i Supreme Court stated that it was "persuaded by the rationale of the majority of jurisdictions which have permitted such exclusions." *Id.* at 255, 815 P.2d at 1022. Moreover, the court left no doubt that it did "not believe" that allowing recovery "under both the liability and underinsurance provisions of the ... policy" would be "consistent with the legislative intent." *Id.* at 256, 815 P.2d at 1022. Unlike *Kau,* which indicated that the uninsured motorist statute must be "liberally construed[,]" *Kau,* 58 Haw. at 51, 564 P.2d at 444, *Kang* emphasized that the underinsured motorist "statute was ... [to] be consistent 'with the overall intent of the no-fault law to provide speedy and adequate protection to persons injured in motor vehicle accidents *at the least possible cost.*'" *Kang,* 72 Haw. at 255, 815 P.2d at 1022 (emphasis in the original) (quoting Sen. Stand.Comm.Rep. No. 689, in 1985 Senate Journal, at 1181). The decision in *Kang* rested not only on the court's interpretation

13. "The policy provided ... that an 'underinsured motor vehicle' shall not include '(1) an insured automobile or an automobile furnished for the regular use of the named insured or a relative, unless the named insured or relative

was neither operating nor occupying such vehicle at the time of the accident[.]'"

*Millers Casualty Ins. Co. v. Briggs,* 100 Wash.2d 1, 3, 665 P.2d 891, 892 (1983).

of the underinsured motorist statute and legislative history, but on underlying policy grounds. *Cf. Kim v. State Farm Mut. Auto. Ins. Co.,* 952 F.2d 314 (9th Cir.1991). (Owned vehicle exclusion in an underinsured motor vehicle endorsement consistent with Hawai'i's public policy.)

The supreme court's conclusion that there cannot be dual recovery without violating the objective of the underinsured motorist statute necessarily forecloses any interpretation of policy coverage which would permit such recovery. By its decision in *Kang,* the supreme court forecasted that in the case of underinsured motorist coverage as in the context of the no-fault law, "not all owned vehicle exclusions are violative of public policy[.]" *Fermahin,* 73 Haw. at 559, 836 P.2d at 1078.

### IV.

For the foregoing reasons the April 24, 1992 order granting National Union's motion for summary judgment and September 23, 1992 judgment are affirmed.