111 P.3d 601

Mathew S. MIKELSON,
Plaintiff–Appellee

v.

UNITED SERVICES AUTOMOBILE
ASSOCIATION, Defendant–
Appellant

and

John Does 1–25; Jane Does 1–25; Doe Corporations 1–25; Doe Partnerships 1–25; and Doe Governmental Entities 1–25, Defendants.

No. 25217.

Supreme Court of Hawaiʻi.

May 12, 2005.

Myles T. Yamamoto, Terrance M. Revere & Jacqueline E. Thurston (Love Yamamoto & Motooka), Honolulu, on the briefs, for defendant-appellant.

Alan Van Etten & Mark G. Valencia (Damon Key Leong Kupchak Hastert), Honolulu, on the briefs, for plaintiff-appellee.

MOON, C.J., LEVINSON, NAKAYAMA, AND ACOBA, JJ., and Circuit Judge WONG, Assigned by Reason of Vacancy.

Opinion of the Court by ACOBA, J.

Defendant–Appellant United Services Automobile Association (Defendant) appeals from the June 19, 2002 judgment of the circuit court of the first circuit (the court) [1] in favor of Plaintiff–Appellee Mathew S. Mikelson (Plaintiff) relating to underinsured motorist benefits. By this appeal, Defendant

1. The Honorable R. Mark Browning presided.

challenges the court's order denying Defendant's motion for order or declaration regarding choice of law, filed on April 30, 2001, and the court's findings of fact, conclusions of law, and order, filed on July 16, 2001.

For the reasons discussed herein, we hold that the court correctly (1) applied Hawai'i law on the choice of law question, (2) determined that Plaintiff was a resident of the named insured's household and, therefore, a covered person under the subject insurance policy for underinsured motorist benefits purposes, and (3) decided that the insurance policy exclusions were inapplicable. Accordingly, the June 19, 2002 judgment is affirmed.

## I.

Larry D. Mikelson (Father), father of Plaintiff, entered into an automobile insurance plan (the Policy) in California with Defendant. The Policy was effective from October 23, 1998 to April 23, 1999. Listed as *"operators"* under the Policy were Father, Ian A. Mikelson, and Plaintiff. It is not disputed that Father is identified as a named insured under the Policy. Three vehicles are listed in the Policy as being "garaged" in Redondo Beach, California.

On January 17, 1999, Plaintiff was riding a motorcycle on Kamehameha Highway. He was carrying a passenger on the motorcycle and had no license or permit to operate the vehicle at the time of the accident. As Plaintiff was approaching the intersection of Waimea Beach Park, a motor vehicle operated by a Ms. Larissa Madison (Madison) made a left turn into the Park, in front of Plaintiff. This caused Plaintiff to collide with Madison's vehicle and Plaintiff fell onto the roadway, suffering injuries. The motorcycle was not insured under any policy Plaintiff had with Defendant. As a result of the accident, Plaintiff required surgery on his right knee. Within less than thirty days, Plaintiff incurred more than $17,500 in medical and ambulance expenses.

At the time of the accident, Plaintiff was a full-time student at the University of Hawai'i–West Oahu (West Oahu), and lived in the City and County of Honolulu. Plaintiff's first semester at West Oahu commenced in January 1999. The majority of Plaintiff's personal belongings remained at Father's home in California. The only personal belongings Plaintiff brought with him to Hawai'i were clothing and his surfboard. Plaintiff possessed a California driver's license at the time of the accident. The permanent address listed on the license was his Father's address in Redondo Beach, California. Plaintiff lived in California during his recovery from his surgery, but he intended to return to Hawai'i in order to continue his education in the fall semester of 1999.

Plaintiff was not employed before or at the time of the accident and, as a result, relied completely on Father for financial support. This support included payment of Plaintiff's educational and travel expenses. Plaintiff was named as a dependent on Father's Internal Revenue Service income tax returns for the years 1998 and 1999.

## II.

On April 20, 1999, Plaintiff filed a civil suit against Madison for the injuries he sustained. Plaintiff obtained $20,000 pursuant to a settlement, release, and indemnity agreement that was executed on June 6, 1999. This $20,000 amount was the limit of liability under all applicable liability bonds or policies covering Madison. The $20,000 was not sufficient to cover Plaintiff's medical expenses.

As a result, Father attempted to obtain benefits under Defendant's Policy. The Policy provides for underinsured motorist coverage for a "covered person" under the "UNINSURED MOTORISTS COVERAGE" section of the Policy. The amount of Bodily Injury Uninsured Motorists Coverage under the Policy is $300,000. A "covered person" is defined as a named insured or a family member of a named insured. A "family member" is defined as a person related to a named insured "by blood, marriage or adoption who is a resident of [the named insured's] household." An "underinsured motor vehicle" is defined as a motor vehicle that is insured, but as to which the amount of such insurance "is less than the limit of liability for Bodily Injury Uninsured Motorists Coverage" that is applicable to a covered auto. A "covered

auto" is defined in relevant part as any vehicle shown in the Declarations. There is neither a choice of law provision within the Policy[2] nor a clause defining "resident of [the named insured's] household."

According to the "GENERAL PROVISIONS" section of the Policy, the "[P]olicy applies only to accidents and losses which occur: (1) [d]uring the policy period as shown in the Declarations; and (2) [w]ithin the policy territory." The "policy territory" encompasses "[t]he United States of America, its territories or possessions[.]"

### III.

The underinsured motorist coverage provision states, in relevant part, that "Bodily Injury Uninsured Motorists Coverage shall not apply until the limits of liability under all applicable liability bonds or policies have been exhausted by payment of judgments or settlements, and proof of such is submitted to us." According to the court's findings of fact, Plaintiff "exhausted" the limits of liability and has submitted reasonable proof to Defendant showing as much.

The Policy also contains the following contested exclusions:

**I. UNINSURED MOTORISTS COVERAGE**

. . . .

With respect to damages for bodily injury caused by an underinsured motor vehicle, Bodily Injury Uninsured Motorists Coverage shall not apply until the limits of liability under all applicable liability bonds or policies have been exhausted by payment of judgments or settlements, and proof of such is submitted to us.

. . . .

**EXCLUSIONS**

A. We do not provide *Uninsured Motorists Coverage* for property damage or bodily injury sustained by any person:

1. *While occupying, or when struck by, any motor vehicle owned by you or any family member which is not insured for this coverage under this policy.* This includes a trailer of any type used with that vehicle. As used in this exclusion, "motor vehicle" means any self-propelled vehicle.

. . . .

4. *While operating any self-propelled vehicle with less than 4 wheels which is not insured for this coverage under this policy. As used in this exclusion, operating means only the actual physical operation by the driver of a vehicle. This does not include a passenger of that vehicle*

. . . .

7. *Using a vehicle without a reasonable belief that the person is entitled to do so.*

. . . .

C. We do not provide *Uninsured or Underinsured* Motorists Coverage for punitive or exemplary damages.

(Emphases added.)

On February 4, 1999, Defendant's representative sent a letter to [Father] denying coverage for Plaintiff's injuries because "the motorcycle does not qualify as a 'covered auto' " in the Policy. On April 2, 1999, Defendant's Claims Manager confirmed the denial of coverage through a subsequent letter.

On May 7, 1999, Plaintiff filed a complaint for declaratory relief against Defendant seeking compensatory damages under the Policy for Plaintiff's injuries (Civ. No. 99–1856–05). On July 26, 1999, Plaintiff filed a

---

2. Defendant asserts "[t]he [P]olicy was issued pursuant to the laws of California," which presumably alludes to the existence of a choice of law provision within the Policy. This assertion, however, is not meritorious for two reasons. First, Defendant ambiguously cites to the entire Policy as support of its assertion. Second, during discovery Defendant was asked through written interrogatories to "[e]xplain why the Policy does not contain a choice of law provision." Defendant first objected to the question on the grounds of it being, *inter alia*, "vague[ ] [and] ambiguous," and then said "[w]ithout waiving the above objections, the policy speaks for itself." In light of Defendant's failure to point to a choice of law provision, it is apparent that the Policy lacks such a provision.

motion for summary judgment which was denied on October 19, 1999.

On February 6, 2001, Defendant filed a motion requesting the court to apply California law rather than Hawai'i law to the case. On April 12, 2001, a bench trial was held to determine the sole issue of whether Plaintiff was entitled to receive underinsured motorist benefits from Defendant. On April 30, 2001, the court issued a written order declaring it would apply Hawai'i law.

On July 16, 2001, the court issued its findings of fact (findings) and conclusions of law (conclusions), and order. The court concluded, *inter alia*, that: (1) Plaintiff was a "resident" of Father's household at the time of the accident because (a) the Policy is ambiguous in its definition of the term "resident" and (b) "actual residence under a common roof with the named insured is not an absolute requirement to be considered a 'resident' of the household"; and (2) inasmuch as "the Policy purports to create two distinct classes of 'covered persons': (a) the named insured and his or her family members; and (b) any other person 'occupying' the 'covered auto[,]' " Plaintiff "was not required to be occupying or operating a 'covered auto' " in order to "collect uninsured benefits."

The court also determined that three of the Policy's exclusions were inapplicable. First, the court concluded that the "less than four wheels exclusion" was inapplicable because (1) such exclusion was "void as against public policy" to the extent that the exclusion "attempts to limit [Plaintiff's] entitlement to [underinsured motorist] coverage" and is inconsistent with *Dines v. Pac. Ins. Co., Ltd.*, 78 Hawai'i 325, 893 P.2d 176 (1995); and (2) the "exclusion of only [uninsured motorist] coverage, but not [underinsured motorist] coverage in [Defendant's] less than four wheels exclusion ... is either (a) a clear indication that [the exclusion] applies to [uninsured], but not [underinsured motorist] coverage or (b) creates an ambiguity, which

requires that the Policy be construed against [Defendant] and resolved in [Plaintiff's] favor, and therefore applies to [an uninsured motorist], but not [underinsured motorist] coverage."

Second, the court decided that the "reasonable belief exclusion" was inapplicable because (1) the exclusionary language is "susceptible of at-least three interpretations" and such ambiguity must be "strictly construed against [Defendant]"; (2) Plaintiff's "alleged traffic violations are irrelevant to the determination of eligibility for [underinsured motorist] coverage under the Policy" as "there is no indication that the ... Legislature intended the denial of [underinsured motorist] benefits as punishment for traffic violations"; (3) the exclusion was "unenforceable as against public policy" inasmuch as Defendant "could and should have clearly communicated ... through precise and unambiguous language" its "desire[ ] to exclude coverage for any person who was not legally operating a vehicle under Hawaii law" if Defendant intended this "limitation;" and (4) Defendant's "exclusion of only [uninsured] coverage but not [underinsured motorist] coverage in [the] reasonable belief exclusion ... is either (a) a clear indication that [the exclusion] applies to [uninsured] but not [underinsured motorist] coverage, or (b) creates an ambiguity, which requires that the Policy be construed against [Defendant] and resolved in [Plaintiff's] favor, and therefore the exclusion applies to [uninsured], but not [underinsured motorist] coverage."

Third, the court concluded that the "owned vehicle" exclusion was void because (1) such exclusions are "invalidated where an injured individual solely seeks [uninsured] or [underinsured motorist] coverage and not any liability benefits as an insured claimant under a personal or family member's policy"; (2) such exclusion is "repugnant to [Hawai'i Revised Statutes (HRS) § ] 431:10C–301(b)(4)" [3] inasmuch as Plaintiff "has only

---

**3.** HRS § 431:10C–301(b)(4) (Supp.2004) provides, in relevant part:

> (b) A motor vehicle insurance policy shall include:
>
> ...

(4) Coverage for loss resulting from bodily injury or death suffered by any person legally entitled to recover damages from owners or operators of underinsured motor vehicles. *An insurer may offer the underinsured motorist cov-*

sought [underinsured motorist] coverage and not both [uninsured motorist] and liability coverage under the same policy"; and (3) the "exclusion of only [uninsured motorist] coverage, but not [underinsured motorist] coverage in [Defendant's] owned vehicle exclusion ... is either (a) a clear indication that [the exclusion] applies to [uninsured], but not [underinsured motorist] coverage or (b) creates an ambiguity, which requires that the Policy be construed against [Defendant] and resolved in [Plaintiff's] favor; i.e. it must [be] construed as applying to [uninsured motorist], but not [underinsured motorist] coverage."

Ultimately, the court ordered that "[Plaintiff] is entitled to [underinsured motorists coverage] under the Policy for injuries and damages resulting from the January 17, 1999 accident, including but not limited to whatever [underinsured motorist] payments are determined to be due at arbitration pursuant to the Policy." On June 19, 2002, the court, based on its findings and the above conclusions and order, entered final judgment in favor of Plaintiff and against Defendant. Defendant filed a notice of appeal on July 18, 2002, from this final judgment.

## IV.

On appeal, Defendant contends that the court erred in: (1) applying Hawai'i law, rather than California law; (2) ruling that Plaintiff is a resident of the named insured's household; (3) deciding that Plaintiff was a named insured;[4] and (4) failing to apply the Policy exclusions. Defendant requests that this court reverse the court's determinations that (1) Hawai'i law applies, (2) Plaintiff was a resident of the named insured's household, (3) Plaintiff is a named insured, and (4) the Policy exclusions are inapplicable.

*erage required by this paragraph in the same manner as uninsured motorist coverage [.]*
(Emphasis added.)

4. Insofar as we hold that the court did not err in concluding that Plaintiff is a resident of the named insured's household, *see* discussion *infra*, and is, therefore, entitled to underinsured motorist benefits, we need not address Defendant's contention that the court erred in deciding that Plaintiff was a named insured.

## V.

The question of the "[c]hoice of law [to be applied in a case] is a question of law reviewable *de novo*," *Jenkins v. Whittaker Corp.,* 785 F.2d 720, 724 (9th Cir.1986)(citing *In re McLinn,* 739 F.2d 1395, 1398 (9th Cir.1984)). Therefore, a choice of law issue is a question of law we review under the right/wrong standard. *See Jenkins,* 785 F.2d at 724; *Ditto v. McCurdy,* 102 Hawai'i 518, 521, 78 P.3d 331, 334 (2003) ("Questions of law are reviewable *de novo* under the right/wrong standard of review." (Internal quotation marks and citation omitted.)).

When reviewing the court's interpretation of a contract, "the construction and legal effect to be given a contract is a question of law freely reviewable by an appellate court." *Brown v. KFC Nat'l Mgmt. Co.,* 82 Hawai'i 226, 239, 921 P.2d 146, 159 (1996) (internal quotation marks and citation omitted).

When reviewing a circuit court's findings of fact and/or conclusions of law, "[t]his court reviews the circuit court's findings of fact under a clearly erroneous standard and the circuit court's conclusions of law *de novo.*" *RGIS Inventory Specialist v. Hawai'i Civil Rights Comm'n,* 104 Hawai'i 158, 160, 86 P.3d 449, 451 (2004).

## VI.

As a preliminary matter, Plaintiff contends that Defendant's points of error should be disregarded by this court in accordance with Hawai'i Rules of Appellate Procedure (HRAP) Rule 28(b)(4)(C)(2002) because (1) Defendant did not include the contested findings and conclusions in its opening brief, and (2) Defendant failed to "specifically identify" the findings or conclusions that it contested.[5]

5. According to HRAP Rule 28(b)(4)(C), an opening brief must include:

[a] concise statement of the points of error set forth . in separately numbered paragraphs. Each point shall state: (i) the alleged error committed by the court or agency; (ii) *where in the record the alleged error occurred;* and (iii) where in the record the alleged error was objected to or the manner in which the alleged error was brought to the attention of the court

The record consists of fifteen volumes of court documents. The large number of documents, incorrect citations to the record and/or omissions of the relevant quotations of the contested findings and conclusions place an unnecessary burden upon "both the parties compelled to respond to the brief and the appellate court attempting to render an informed judgment." *Housing Fin. & Dev. Corp. v. Ferguson*, 91 Hawai'i 81, 85, 979 P.2d 1107, 1111 (1999). Nevertheless, it is within this court's discretion to address Defendant's asserted points of error despite nonconformance with HRAP Rule 28(b)(4)(C). *See Sprague v. Cal. Pac. Bankers & Ins., Ltd.*, 102 Hawai'i 189, 196, 74 P.3d 12, 19 (2003). Even though Defendant incorrectly cited to the court's order regarding Defendant's choice of law motion, Defendant's other errors are harmless insofar as Defendant has primarily referred to the court's July 16, 2001 findings and conclusions.

## VII.

### A.

▮ As to the conflict of law issue, Plaintiff relies on *Peters v. Peters*, 63 Haw. 653, 660, 634 P.2d 586, 591 (1981), and asserts that "there is a presumption that Hawaii law applies unless another state's law 'would best serve the interests of the states and persons involved.' " This court has "moved away from the traditional and rigid conflict-of-laws rules in favor of the modern trend towards a more flexible approach looking to the state with the most significant relationship to the parties and subject matter." *Lewis v. Lewis*, 69 Haw. 497, 499, 748 P.2d 1362, 1365 (1988) (citing *Peters, supra* ). This flexible approach places "[p]rimary emphasis ... on deciding which state would have the strongest interest in seeing its laws applied to the particular case." *Id.* Hence, this court has said that the interests of the

states and applicable public policy reasons should determine whether Hawai'i law or another state's law should apply. *See Peters,* 63 Haw. at 667–68, 634 P.2d at 595. "The preferred analysis, [then] in our opinion, would be an assessment of the interests and policy factors involved with a purpose of arriving at a desirable result in each situation." *Id.* at 664, 634 P.2d at 593.

In this regard, Plaintiff's reliance on *Abramson v. Aetna Cas. & Sur. Co.*, 76 F.3d 304 (9th Cir.1996), and *Lemen v. Allstate Ins. Co.*, 938 F.Supp. 640, 643 (D.Haw.1995), is persuasive. In *Abramson,* plaintiff, a New Jersey resident, was riding a bicycle in Hawai'i when he was fatally injured by a car driven by an underinsured motorist. 76 F.3d at 305. Plaintiff's estate sought underinsured motorist benefits from an insurance policy that contained an anti-stacking provision. *Id.* Applying Hawai'i law, the Hawai'i federal district court found the anti-stacking provision invalid. *Id.*

Relying on *Peters,* the Ninth Circuit Court of Appeals affirmed the district court's ruling and stated that "Hawaii's choice-of-law approach creates a presumption that Hawaii law applies unless another state's law would best serve the interests of the states and persons involved." *Id.* (internal quotation marks and citations omitted). In balancing the interests of Hawai'i and New Jersey, the Ninth Circuit noted that *"Hawaii's interest in the application of Hawaii law to insurance policies* governing automobile accidents-which *is especially strong given the number of non-resident drivers in the state*-is not outweighed by any other state's interests." *Id.* (emphases added). The Ninth Circuit also approved the district court's finding that "New Jersey's interests in the insurance contract did not control the choice-of-law analysis because of the lack of any negotiation over the terms of the contract and the parties' expectations that the contract would cover the insured as he travelled

---

or agency. Where applicable, *each point shall also include the following:* ... (C) when the point involves a finding or conclusion of the court or agency, *a quotation of the finding or conclusion urged as error* [.]

(Emphases added.) Plaintiff's assertions are correct insofar as Defendant has incorrectly cited to

the court's order denying Defendant's motion for choice of law in its first point of error, has cited to conclusions which are not related to its third point of error, and has omitted inclusion of the appropriate quotations of the contested findings or conclusions.

throughout the United States and Canada." *Id.* Applying this same balancing of interests to the instant case, there is a strong interest in applying Hawai'i law to protect non-resident college students attending institutions within this state buttressed by the adhesionary nature of the Policy and the Policy's applicability throughout the United States.

Insofar as *Lemen* is factually similar to the case at bar, it is persuasive.[6] In *Lemen,* the plaintiff sustained injuries in an automobile accident in Hilo, Hawai'i which led to her claim of underinsured motorist benefits under her father's policy. 938 F.Supp. at 641. Her father's policy, issued and delivered in Alaska, insured two of father's vehicles, both of which were located in Alaska. *Id.* The pick-up truck that the plaintiff was driving at the time of the accident was registered in her name but was not insured. *Id.* The plaintiff, a resident and citizen of Alaska, was attending the University of Hawai'i at Hilo at the time of the accident. *Id.*

Pursuant to *Peters,* the United States District Court for the District of Hawai'i ("district court") in *Lemen* determined that Hawai'i had "a stronger interest in seeing its laws applied" for several reasons. 938 F.Supp. at 643. First, according to the district court, the plaintiff's accident occurred in Hawai'i. *Id.* Second, notwithstanding the fact that the plaintiff was a resident of Alaska at the time of the accident, she was living in Hawai'i while attending the University of Hawai'i as a full-time student. *Id.* Third, the fact that the plaintiff's truck was uninsured at the time of the accident was irrelevant because under Hawai'i law underinsured mo-

torist coverage "follows the insured person and not the insured vehicle." *Id.* (citing *Dawes v. First Ins. Co. of Hawai'i, Ltd.,* 77 Hawai'i 117, 123–24, 883 P.2d 38, 44–45 (1994); *Allstate Ins. Co. v. Morgan,* 59 Haw. 44, 47–48, 575 P.2d 477, 479–80 (1978); and *Allstate Ins. Co. v. Hirose,* 77 Hawai'i 362, 366, 884 P.2d 1138, 1142 (1994) (parentheticals omitted)). Fourth, the district court determined that this court "has articulated a strong interest in protecting the rights of persons within the state to recover benefits pursuant to automobile insurance policies." *Id.* at 644 (citing *Methven–Abreu v. Hawaiian Ins. & Guar. Co., Ltd.,* 73 Haw. 385, 395–96, 834 P.2d 279, 285 (1992); *DeMello v. First Ins. Co. of Hawaii, Ltd.,* 55 Haw. 519, 523–24 & n. 4, 523 P.2d 304, 306–07 & n. 4 (1974)).

The district court eschewed application of Alaska law because doing so "would frustrate Hawaii's state policy to protect persons injured within its boundaries." *Id.* at 644. The defendant insurer's assertion that "the law of the state where an insurance contract is made governs," *id.,* was rejected in light of insurance policy language stating that "during the premium period, ... [the] policy applies to losses to the auto, accidents and occurrences within the United States of America, its territories or possessions or Canada, or between their ports." *Id.* at 644 n. 5. Hence, the district court concluded the defendant's insurance policy was such that it was "foreseeable that an insured family member might temporarily live out-of-state and suffer a car accident, thereby subjecting [the defendant] to the law of a foreign state."

---

**6.** Defendant argues that "reliance [upon *Lemen* ] is not well-founded" because the case "mistakenly used the wrong section of the Restatement[,]" § 145, which pertains to conflicts of law in *tort* actions, as opposed to § 188, which provides the standard for *contracts* disputes. *See Restatement (Second) of Conflict of Laws (Restatement )* §§ 145, 188 (2004). While it is true that § 145 was discussed in the *Peters* decision, it was not adopted as Hawai'i's approach to conflict of law matters. *See* 63 Haw. at 662–64, 634 P.2d at 592–93. Rather, this court cited to § 145 to note the "most significant relationship" approach to conflicts of law. *See id.* at 662, 634 P.2d at 592. Both §§ 145 and 188 address the "most significant relationship" approach. *See Restatement* §§ 145, 188.

In addition to the "most significant relationship" approach, *Peters* referred to two other theories-"governmental interests" and Professor Leflar's approach. *See* 63 Haw. at 662–64, 634 P.2d at 592–93. Upon surveying these three approaches, this court ultimately adopted the view that an assessment of the interests and policy factors involved with a purpose of arriving at a desirable result should be determinative. *Id.* at 664, 634 P.2d at 593. Hence, the *Lemen* court's subsequent characterization of the *Peters* decision as being "guided by the Restatement (Second) of Conflict of Laws § 145 (1971)[,]" 938 F.Supp. at 643, is not binding upon this court.

*Id.* at 644. Based on the foregoing, the *Lemen* court applied Hawai'i law.

### B.

Similarly in the case at bar, the accident occurred in Hawai'i. At the time of the accident, Plaintiff was living in Hawai'i and was attending West Oahu as a full-time student. The district court's determination that Hawai'i has a strong interest in protecting those injured within its borders is consistent with this court's interpretation of Hawai'i's underinsured motorist statutes. Hawai'i's underinsured motorist statute, HRS § 431:10C–301(b)(4) (1993 & Supp. 1998), is intended "to provide protection, through voluntary insurance, for persons who are injured by underinsured motorists whose liability policies are inadequate to pay ,for personal injuries caused by motor vehicle accidents." *Taylor v. Gov't Employees Ins. Co.*, 90 Hawai'i 302, 307–08, 978 P.2d 740, 745–46 (1999) (quoting the legislative history of HRS § 431:10C–301). Because the purpose of Hawai'i's underinsured motorist statute is to protect persons, this court has held that under Hawai'i law, insurance "follows the insured's person." *Dawes,* 77 Hawai'i at 123, 883 P.2d at 44. California's law, denying coverage when "the vehicle involved in a given accident" is not "as described in the policy for which the claim is made," *Hartford Cas. Ins. Co. v. Cancilla,* 28 Cal.App.4th 1305, 34 Cal.Rptr.2d 302, 307 (1994), would thus "frustrate Hawaii's state policy to protect persons injured within its boundaries." *Lemen,* 938 F.Supp. at 644.

Finally, while the Policy lacks a choice of law provision, the Policy does contain a geographical area provision that is substantially similar to the geographical area provision in the defendant's policy in *Lemen.*[7] Because the Policy affirmatively acknowledges that the terms and conditions therein apply "to accidents and losses" which occur anywhere within the United States, it is foreseeable "an insured family member ... temporarily liv[ing] out of state [may] ... suffer a car

accident," *Lemen,* 938 F.Supp. at 644, and thereby may be subjected to the laws of other states-including those of Hawai'i.

### C.

Defendant contends that this court adopted and, therefore, should apply the conflict of laws test set forth in *State v. Bridges,* 83 Hawai'i 187, 925 P.2d 357 (1996). Under this test, Defendant contends the appropriate law is determined "by considering the domicile of the parties, the situs of the transactions, and the interest of the forum in applying its own law." *Id.* at 195, 925 P.2d at 365 (internal quotation marks and citation omitted).

, In *Bridges,* the defendants were arrested in California by California police officers in a "sting" operation involving a drug transaction between the defendants and the Honolulu Police Department. 83 Hawai'i at 188–91, 925 P.2d at 358–61. The issue posed in *Bridges* was "under what circumstances will evidence obtained in [California] (the situs state) be suppressed in a criminal prosecution in [Hawai'i] (the forum state)[.]" *Id.* at 194, 925 P.2d at 364. Noting that the issue was "novel," this court set forth two methods by which to adjudicate the issue: (1) conflicts of law interest analysis; and (2) exclusionary rule analysis. *Id.* at 194–95, 925 P.2d at 364–65. This court then adopted and applied the exclusionary rule analysis as "the better approach." *Id.* at 195, 925 P.2d at 365. Therefore, Defendant's reliance on interest analysis is not supported by *Bridges.*

Defendant also relies on *Roxas v. Marcos,* 89 Hawai'i 91, 969 P.2d 1209 (1998), *Lesser v. Boughey,* 88 Hawai'i 260, 965 P.2d 802 (1998), and *California Fed. Sav. & Loan Assoc. v. Bell,* 6 Haw.App. 597, 735 P.2d 499 (1987). Each one of these cases, however, is also distinguishable. *Roxas* did not adjudicate a conflict of laws issue. *See Roxas,* 89 Hawai'i at 117 n. 16, 969 P.2d at 1235 n. 16 ("None of the parties address the issue of choice of law in their briefs."). *Lesser* applied the forum

---

7. As previously mentioned, Defendant's Policy states that
"[t]his policy applies only to accidents and losses which occur: (1) [d]uring the policy period as

shown in the Declarations; and (2) [w]ithin the policy territory." The "policy territory" is defined as encompassing "[t]he United States of America, its territories or possessions[.]"

non conveniens doctrine which establishes the appropriate forum site, whereas a question involving conflict of laws addresses the appropriate law to be applied. *See Lesser,* 88 Hawai'i at 262, 965 P.2d at 804 ("This court has previously described the doctrine of forum non conveniens as the discretionary power of a court to decline to exercise a possessed jurisdiction whenever it appears that the cause before it may be more appropriately tried elsewhere." (Internal quotation marks and citation omitted.)).

Finally, citing *Bell,* Defendant contends that Restatement (Second) of Conflict of Laws § 188 (1971) is controlling. While the Intermediate Court of Appeals (ICA) made reference to the Restatement in *Bell,* 6 Haw. App. at 604–05, 735 P.2d at 504–05, the ICA decided the underlying choice of law issue utilizing Professor Leflar's "choice-influencing considerations" approach referred to in *Peters. See id.* at 605–07, 735 P.2d at 505–06.

It should be noted, however, that Professor Leflar's "choice influencing considerations" approach was not adopted by this court in *Peters. Peters* indicated there are three generally accepted approaches to modern conflict of laws analysis: (1) the "governmental interests" approach advanced by Professor Currie;[8] (2) "the most significant relationship" test embodied in the Restatement (Second) of Conflict of Laws (1971); and (3) the "choice-influencing considerations" approach articulated by Professor Leflar.[9] 63 Haw. at 662–63, 634 P.2d at 592–93 (1981). *Peters* did not expressly adopt one approach over another. Rather, this court concluded as said before that "[t]he preferred analysis ... would be an assessment of the interests and policy factors involved with a purpose of arriving at a desirable result in each situation." *Id.* at 664, 634 P.2d at 593.

**8.** The "governmental interests" approach considered "the governmental interests of the states whose laws might be applicable, but with a basic preference of the forum's own law." *Peters,* 63 Haw. at 662, 634 P.2d at 592.

**9.** Professor Leflar set forth "fundamental policy factors ... which are deemed to underlie all choice-of-law decision[s]." *Peters,* 63 Haw. at

**D.**

In light of the foregoing, we conclude that the court was correct in applying Hawai'i law to the case at bar.

**VIII.**

■ The court found and it is undisputed between the parties on appeal that Father is a "named insured" under the Policy and that, as Father's son, Plaintiff is related by blood to a named insured. The parties disagree, however, on whether Plaintiff satisfies the further requirement of being a "covered person"; that is, a resident of Father's household, inasmuch as at the time of the accident Plaintiff was not present where his Father's household was located.

Defendant asserts that this court defined a resident of a named insured's household in *AIG Hawai'i Ins. Co. v. Estate of Caraang,* 74 Haw. 620, 851 P.2d 321 (1993), and *Kok v. Pac. Ins. Co., Ltd.,* 51 Haw. 470, 462 P.2d 909 (1969). In *Caraang,* the defendant Vilamor, while a passenger in a truck driven by defendant Godinez, shot and killed defendant Caraang while Caraang operated another vehicle. 74 Haw. at 625, 851 P.2d at 324. The vehicle Godinez was driving was insured under an automobile insurance policy issued to Bonifacio and Cathy Godinez. *Id.* at 623, 851 P.2d at 323. The insurance policy defined a "family member" as "a person related to [the named insureds] by blood, marriage or adoption who is a resident of [the named insureds'] household, including a ward or foster child." *Id.* at 629, 851 P.2d at 326. Apparently pursuant to this definition, this court held that Godinez "was not a family member of a named insured" because although "Godinez was related by blood to Bonifacio," Godinez was living with his natural mother at the time of the shooting. *Id.* at 629–30, 851 P.2d

663, 634 P.2d at 592–93. These policy factors include:

(1) predictability of result,
(2) maintenance of interstate order,
(3) simplification of the judicial task,
(4) advancement of the forum's governmental interests, and
(5) application of the better rule of law.
*Id.* at 663, 634 P.2d at 593.

at 326. However, *Caraang* is inapposite because the case does not address the situation of an out-of-state student.

While *Kok* also did not directly address the situation of an out-of-state student, this court indicated that based on the facts and circumstances of a particular case, military duty may constitute a period of temporary absence. 51 Haw. at 472, 462 P.2d at 911. In *Kok*, the father of the named insured sought uninsured motorist benefits under the named insured's insurance policy. 51 Haw. at 470, 462 P.2d at 910. While confirming the proposition that "actual residence under a common roof is not an absolute requirement," *id.* at 471, 462 P.2d at 911, this court held that because the father made "no showing of temporary absence, no showing that [the father] ever lived at named insured's residence, [and] no showing of support beyond two meals a day," the father was not a resident of the named insured's household. *Id.* at 472, 462 P.2d at 911. Citing to cases from other jurisdictions, it was noted that a "temporary absence while on military duty does not change prior and continuing residence with parents[.]" *Id.* (citation omitted). As Plaintiff points out, this court has not decided whether and under what circumstances a child who attends school in another state is considered to be temporarily absent from the household.

### IX.

It has been said that "[a] resident of a household is one who is a member of a family who lives under the same roof." *Crossett v. St. Louis Fire & Marine Ins. Co.,* 289 Ala. 598, 269 So.2d 869, 872 (1972) (internal quotation marks and citation omitted). The term "residence," however, "emphasizes membership in a group rather than an attachment to a building." *Id.* As such, courts have determined that whether a child remains a member of a household when he or she lives apart from the family's home while attending an educational institution depends on the facts and circumstances of each case. *See, e.g., id.* In *Crossett,* the Alabama court said, "[o]rdinarily when a child is away from home attending school, he remains a member of the family household, and the question of

when he cease[s] to be such is one which must be determined from all of the facts and circumstances as revealed by the evidence." *Id.* (internal quotation marks and citation omitted).

Such evidence must tend to show the student's intention to remain a member of the family household. *See, e.g., id.* ("[Residence] is a matter of intention and choice rather than one of geography." (Internal quotation marks and citation omitted.)); *Am. States Ins. Co. v. Walker,* 26 Utah 2d 161, 486 P.2d 1042, 1043–44 (1971) (affirming the trial court's determination that the plaintiff, who studied and lived at several places other than her father's household in Idaho, was still a resident of her father's household because she had an Idaho driver's license rather than a Utah driver's license, she relied on her parents for partial financial support, she kept her books, furniture and clothing at her father's home, and she considered herself to be a resident of Idaho); *Manuel v. Am. Employers Ins. Co.,* 228 So.2d 321, 322 (La. Ct.App.1969) (holding that the plaintiff, who lived forty miles from his father's home while attending college, was still a resident of his father's household because the plaintiff kept his permanent mailing address as his father's home, received his mail from his father's home, returned to his father's home on weekends and during vacations, and kept most of his personal belongings at his father's home).

In *Goldstein v. Progressive Cas. Ins. Co.,* 218 Mich.App. 105, 553 N.W.2d 353, 354 (1996), *appeal denied,* 455 Mich. 869, 568 N.W.2d 82 (1997), the plaintiff was involved in a car accident that occurred in Michigan. The plaintiff attended college in Missouri and his parents' home was located in Maryland. *Id.* at 354–55. Following the accident in Michigan, the plaintiff claimed auto insurance coverage under his father's liability policy. *Id.* at 354. In order to determine whether the plaintiff was a resident of his father's household in Maryland, the *Goldstein* court identified several factors, including (1) the subjective or declared intent of the student to remain a part of his or her parents' household, (2) the formality of the relationship between the named insured and the person claiming insurance coverage under the

named insured's insurance policy, (3) whether the place where the person lived was the same premises as the named insured, and (4) the existence of another place of lodging away from the named insured for the person claiming insurance coverage. *Id.* at 356. When considering the status of a child, the court also identified other relevant factors, including (1) the child's mailing address, (2) whether some of the child's possessions were located with the parents, (3) the address listed on the child's driver's license or others documents, (4) whether a room was maintained for the child at the parents' home, and (5) the child's financial dependency upon the parents. *Id.*

Ultimately, the *Goldstein* court determined that the plaintiff was a resident in his father's household because (1) "the plaintiff kept the majority of his personal possessions at his parents' home in Maryland," (2) the plaintiff "used his parents' address on his Maryland driver's license," (3) the plaintiff "had his own bedroom at his parents' home," and (4) the plaintiff was "financially dependent" on his parents who paid for his college education and "claimed him as a dependent on [his father's] tax returns." *Id.* at 356–57.

In contrast to the foregoing, the plaintiff in *Hamilton v. State Farm Mut. Auto. Ins. Co.*, 364 So.2d 215, 216 (La.Ct.App.1978), *cert. denied*, 366 So.2d 915 (1979), was injured in an automobile accident and sought recovery under the uninsured motorist provision of his father's insurance policy. Prior to attending college, the plaintiff had resided with his parents since birth. *Id.* at 217. After the first two years of college, the plaintiff became and continued to be financially self-supporting while living apart from his parents but in the same state. *Id.* Throughout the six years the plaintiff lived away from his parents, he visited his parents at least once a month. *Id.* Just prior to his graduation, the plaintiff decided to go into business for himself and in line with this decision, he leased an apartment. *Id.*

At the time of the accident, the plaintiff had moved 75% of his belongings out of his parents' home and into his apartment. *Id.* The plaintiff's permanent address was the address of his business. *Id.* at 218. The plaintiff admitted that he neither intended to reside with his parents upon graduation, nor did he consider himself a resident of his parents' household. *Id.* at 217–18. In light of the foregoing facts, the *Hamilton* court held that the plaintiff was not a resident of his parents' household for the purposes of uninsured motorist coverage. *Id.* at 218.

## X.

In the case at bar, it is undisputed that most of Plaintiff's belongings remained at his Father's house. *See Goldstein*, 553 N.W.2d at 356. Indeed, the only personal belongings that Plaintiff brought with him to Hawai'i were his surfboard and some clothing. It is also uncontested that Plaintiff maintained a room in his Father's home, and was completely financially dependent on his Father while living in Hawai'i. *See id.* at 356–57. Because of this dependency, Father declared Plaintiff a dependent on his income tax returns. *See Morgan v. Illinois Farmers Ins. Co.*, 392 N.W.2d 37, 39 (Minn.Ct.App.1986) (relying on, *inter alia*, the fact that the plaintiff was listed as a dependent on her parents' tax returns was sufficient for the plaintiff to be considered a resident of her parents' household for insurance coverage). In addition, at the time of the accident, Plaintiff had a California driver's license that listed his Father's address as Plaintiff's permanent address. *See Goldstein*, 553 N.W.2d at 357. Therefore, it would appear Plaintiff remained a resident of his Father's California household while living in an apartment in Hawai'i.[10]

Defendant essentially asserts that Plaintiff intended to permanently reside in Hawai'i.

---

10. Plaintiff argues that a letter written by a USAA representative to Father establishes that USAA "had a policy of extending insurance coverage benefits to children of a named insured's household who were away at school." Insofar as the court did not rely on this letter, but on the findings discussed *infra*, we do not consider this letter in determining that the court correctly concluded that Plaintiff was domiciled in Father's household and was, therefore, a "resident" in that household at the time of the accident.

The matters that Defendant relies upon,[11] however, are largely unsupported by the court's findings.[12] "In most instances the points urged either involve only questions of fact or are based on assertions of fact contrary to findings of the trial court." *Campbell v. DePonte*, 57 Haw. 510, 513, 559 P.2d 739, 741 (1977) (block format and citation omitted). Defendant "has the burden of pointing out specifically wherein the findings are clearly erroneous." *Id.* (block format, italics, and citation omitted). However, Defendant does not challenge the court's findings as clearly erroneous. *See id.*

Perhaps the only item that relates to Defendant's position is the court's finding that Plaintiff lived in the City and County of Honolulu at the time of the accident. But, inasmuch as this court has held that "actual residence under a common roof with the named insured is not an absolute require-ment[,]" the court's determination that "[Plaintiff] was not required to be physically living in [Father's] California household at the time of the January 17, 1999 accident" was right.

## XI.

The court also indicated that the Policy was ambiguous because the word "resident" was not defined and because the Policy did not "indicate whether a child away at a post-secondary school is considered a resident of the named insures parents' household." Apparently in view of the absence of a definition for "resident" or the phrase "resident of the named insured's household," the court relied on HRS § 431:10C-103 (Supp.2000), which contains the statutory definition of the term "insured" as it is used within Hawai'i's underinsured and uninsured motorist statutes.[13]

11. In asserting that Plaintiff was not a resident of his Father's household, Defendant relies on deposition testimony by Plaintiff that (1) he listed "59-654 Kam Highway" as his permanent mailing address and (2) he claimed legal residency in California until October 4, 1998 on a University of Hawai'i application form. Insofar as these matters may be considered, they related to Plaintiff's address for mailing purposes and residency information on college application forms. In light of the unchallenged findings upon which the court based its conclusion that Plaintiff was a resident of his Father's household, it cannot be concluded that for insurance coverage purposes the court was clearly erroneous in determining that Plaintiff was a resident of Father's household.

12. The court made the following nine findings in concluding that Plaintiff remained a resident of his Father's household while attending college in Hawai'i:

4. On January 17, 1999, [Plaintiff] had a California driver's license that listed his father's ... California address as his permanent address.

5. On January 17, 1999, [Plaintiff] was not gainfully employed and was completely dependent on his father for financial support.

6. On January 17, 1999, [Plaintiff] maintained a bedroom in his father's California home.

7. On January 17, 1999, [Plaintiff] maintained almost all of his personal possessions in his father's California home, including his car, stereo, television, and most of his clothes and books.

8. The only possessions [Plaintiff] brought with him from California to Hawai'i were clothing and his surf board.

9. [Plaintiff] was named as a dependent on [Father's] Internal Revenue Service income tax returns for the years 1998-1999.

10. [Father] was completely responsible for [Plaintiff's] tuition, books, and other school related expenses while [Plaintiff] attended the University of Hawaii-West Oahu.

11. [Father] paid all of [Plaintiff's] travel expenses for [Plaintiff's] trips to and from Hawai'i.

12. [Father] paid all of [Plaintiff's] medical and accident insurance premiums before, during, and after the time [Plaintiff] was injured on January 17, 1999, including premiums for the Policy.

Defendant did not specifically challenge these findings as clearly erroneous and, therefore, this court will not disturb the court's findings. *See RGIS Inventory Specialist*, 104 Hawai'i at 160, 86 P.3d at 451 (stating that "[t]his court reviews the circuit court's findings of fact under a clearly erroneous standard").

13. HRS § 431:10C-103 defines an insured as the following:

**Definitions.** As used in this article:

. . . .

"Insured" means:

(1) The person identified by name as insured in a motor vehicle insurance policy complying with section 431:10C-301; and

(2) A person residing in the same household with a named insured, specifically:

(A) A spouse or reciprocal beneficiary or other relative of a named insured; and

(B) A minor in the custody of a named insured or of a relative residing in the same household with a named insured.

A person resides in the same household if the person usually makes the person's home in the

Under that definition, one is considered an insured if the person "usually" resides in the same household as the named insured, although "temporarily liv[ing] elsewhere." HRS § 431:10C–103.

In this connection, Defendant asserts, based on *Foote v. Royal Ins. Co. of Am.*, 88 Hawai'i 122, 962 P.2d 1004 (1998), and to a certain extent, *Kok*, that "the language of the [P]olicy is not ambiguous." Defendant's reliance on these cases is, however, misplaced. *Foote* is inapposite because this court held that the "family member" clause as it pertained to "an officer or shareholder of a closely held corporation" is not ambiguous because "a corporation cannot have a 'family member' " and because extending coverage to officers or shareholders "would result in rewriting the policy." *Foote*, 88 Hawai'i at 125, 962 P.2d at 1007. *Kok* held that the insurance policy in that case "unambiguously and clearly" defined an insured as "the named insured and any relative of the named insured who is a resident of the same household." *Kok*, 51 Haw. at 470–71, 462 P.2d at 910. This court neither defined the term "resident" nor the phrase "resident of the named insured's household" in *Kok*. Accordingly, Defendant's cases do not govern.

In light of the above, the facts and circumstances of this case demonstrate that Plaintiff was temporarily absent from his Father's home while attending college in Hawai'i at the time of the accident. Based on the findings of the court, it cannot be said the court erred in its conclusion that Plaintiff was a resident of his Father's, the named insured's, household in California.

### XII.

Lastly, Defendant contends that exclusions within the Policy preclude Plaintiff's claim. These exclusions, previously referred to, include: (A) the "owned but not insured" exclusion; (B) the "less than four wheels" exclusion; and (C) the "reasonable belief" exclusion.

> same family unit, which may include reciprocal beneficiaries, *even though the person temporarily lives elsewhere.*

### A.

■ To reiterate, exclusion No. 1 states, in relevant part, that Defendant "do[es] not provide Uninsured Motorists Coverage for ... bodily injury sustained by any person ... *[w]hile occupying,* or when struck by, *any motor vehicle owned* by you or any family member *which is not insured* for this coverage under this policy." (Emphases added.) Defendant maintains that such an exclusion is valid in the *underinsured* context pursuant to *Nat'l Union Fire Ins. Co. v. Reynolds,* 77 Hawai'i 490, 889 P.2d 67 (App. 1995) and *Budget Rent–A–Car Systems, Inc. v. Coffin,* 82 Hawai'i 351, 922 P.2d 964 (1996). (Emphasis added.) On the other hand, Plaintiff argues that "owned vehicle" exclusions have been void in Hawai'i for over two decades, relying on *Kau v. State Farm Mut. Auto. Ins. Co.,* 58 Haw. 49, 564 P.2d 443 (1977), *Methven–Abreu v. Hawaiian Ins. & Guar. Co., Ltd.,* 73 Haw. 385, 834 P.2d 279 (1992), and *Lemen v. Allstate Ins. Co.,* 938 F.Supp. 640 (D.Haw.1995).

### 1.

Defendant's reliance on the cited cases for the proposition that an "owned but not insured" exclusion is valid in the underinsured context is not persuasive. In *Reynolds,* a passenger made claims for benefits under *both* the insured's liability coverage and underinsured coverage. 77 Hawai'i at 492, 889 P.2d at 69. In resolving the ultimate issue of dual recovery by the passenger, the ICA concluded that "automobile insurance policies such as the one here may bar dual recovery under both liability and underinsured coverages without violating the underinsured motorist statute." *Id.* at 496, 889 P.2d at 73.

Also at issue in *Reynolds* was whether the "owned vehicle" exclusion in the insurance policy was "void because it is similar to the owned vehicle exclusion" in an uninsured motorist insurance policy that was "held void as against public policy in *Kau*[.]" *Id.* The exclusionary language in question in *Reynolds* was as follows:

DEFINITIONS

(Emphasis added.)

Throughout this policy, "you" and "your" refer to the "named insured" shown in the Declarations. . . .

. . . .

### PART C: UNDERINSURED MOTORISTS COVERAGE–HAWAII

We will pay damages which a *covered person* is legally entitled to recover from the owner or operator of an *underinsured motor vehicle* because of bodily injury:

1. Sustained by a *covered person;* and

2. Caused by an accident.

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the *underinsured motor vehicle.*

. . . .

However, *"underinsured motor vehicle"* does not include any vehicle or equipment:

. . . .

2.. Owned by or furnished or available for the regular use of you or any *family member.*

*Id.* at 494–95, 889 P.2d at 71–72. First, the ICA noted that this "court has not always found that an owned vehicle exclusion is void as against public policy [and i]t has declined to extend *Kau* to invalidate an owned vehicle exclusion in a no-fault automobile insurance policy." *Id.* at 497, 889 P.2d at 74 (citation omitted).

Next, in holding that *Kau* does not "nullif[y] owned vehicle exclusions in . . . underinsured motorist endorsements," *id.,* the ICA's reasoning was limited to the facts in *Reynolds* and to policy reasons that disallowed dual coverage under liability and underinsurance provisions. *Id.* at 498, 889 P.2d at 75. Hence, *Reynolds* was concerned with dual coverage claims made by a passenger, *id.* at 492, 496, 889 P.2d at 69, 73, while this case is concerned with a "covered person's" claims through underinsurance coverage.

*Lemen* is illustrative of the distinction between cases concerning dual coverage claims and claims brought solely through underinsurance coverage. At issue in *Lemen* was the validity of the following exclusionary language in the insurance policy:

Allstate will not pay any damages an insured person is legally entitled to recover because of . . . bodily injury or property damage sustained while in, on, getting into or out of or when struck by an uninsured or underinsured motor vehicle which is owned by you or a resident relative.

938 F.Supp. at 643 n. 2 (emphasis omitted). As discussed *supra,* the federal district court of Hawaiʻi applied Hawaiʻi law and determined that the "owned vehicle" exclusion was void because plaintiff sought "[underinsured] coverage" from her father's policy with "no risk" that the underinsured coverage would be "improperly substituted for liability in coverage." *Id.* at 646. In this regard, *Reynolds* did not state that *all* owned vehicle exclusions were void as against public policy. Rather, the ICA observed that this court "forecasted that in the case of underinsured motorist coverage as in the context of the no-fault law, *not all* owned vehicle exclusions are violative of public policy[.]" 77 Hawaiʻi at 499, 889 P.2d at 76 (emphasis added) (internal quotation marks and citation omitted).

Defendant next relies on *Coffin,* 82 Hawaiʻi 351, 922 P.2d 964, as a reaffirmation of *Reynolds* and the proposition that owned vehicle exclusions are valid in the underinsured context. The facts and reasoning in *Coffin,* however, are plainly different from those in the instant case. In *Coffin,* the injured individual was involved in a rental car accident on Saddle Road on the island of Hawaiʻi. *Id.* at 352, 922 P.2d at 965. The rental contract contained a use limitation that stated "driving on Saddle Road and Waipio Valley Access Roads is prohibited." *Id.* In upholding the use limitation, this court relied on the plain language of HRS §§ 431:10C–104 and 431:10C–105 relating, respectively, to the conditions of operation and registration of motor vehicles and self-insurance. *Id.* at 355, 358, 922 P.2d at 968, 971. The instant case, however, is concerned with an "owned but not insured" exclusion instead of a use limitation. This case also relies on the application of a different statutory provision, that is Hawaii's underinsured motorist statute, HRS § 431:10C–301(b)(4), rather than HRS §§ 431:10C–104 and 431:10C–105.

*Coffin* does approve of the principle that "liability insurers have the same rights as individuals to limit their liability, and to impose whatever conditions they please on their obligation, provided they are not in contravention of statutory inhibitions or public policy." *Id.* at 356, 922 P.2d at 969 (internal quotation marks and citation omitted). In accordance with this principle, *Coffin* cited *Reynolds* as authority that "Hawai'i's appellate courts have upheld the propriety of several standard exclusions to insurance coverage." *Id.* However, this court in *Coffin* did not state that the "owned vehicle" exclusion was valid as to all underinsured motorist insurance policies.

Because the facts and reasoning in *Reynolds* and *Coffin* are distinguishable from the facts in this case, Defendant's reliance on these cases is unpersuasive.

### 2.

In contrast to Defendant's arguments, the cases relied on by Plaintiff are instructive in the instant case. In *Kau*, the plaintiff, who resided with her parents, was driving a vehicle owned and registered in the name of her mother. 58 Haw. at 49, 564 P.2d at 443. Plaintiff was involved in an accident caused by another driver who was not insured and whose vehicle was not insured. *Id.* Plaintiff's father, at the time, owned another automobile which was covered by an insurance policy with uninsured motorist coverage. *Id.* at 49–50, 564 P.2d at 443–44. The mother's car was not listed on the insurance policy. *Id.* at 50, 564 P.2d at 443. This court in *Kau* determined that the "owned vehicle" exclusion in the father's insurance policy was void as "violative of the . . . uninsured motorist statute." 58 Haw. at 50–51, 564 P.2d at 444. At issue was the following exclusionary language:

This (uninsured motorist) insurance does not apply: . . . (b) To bodily injury to an insured *while occupying* . . . a land motor *vehicle owned by the named insured or any resident of the same household, if such vehicle is not an owned motor vehicle*[.]

An '*owned motor vehicle*' is defined in the policy as 'the *motor vehicle* or trailer *de-*

*scribed in the declarations,* and includes a temporary substitute automobile, a newly acquired automobile[.]'

*Id.* at 50, 564 P.2d at 444 (emphases added). Because "[t]he effect of the exclusionary clause is to deny [plaintiff] the full protection of the statute[,]" this court struck down the clause as "repugnant to the statute." *Id.* at 51, 564 P.2d at 444.

In *Methven–Abreu*, the plaintiff-passenger was injured in a one-car accident in her uninsured vehicle. 73 Haw. at 388, 834 P.2d at 282. At the time of the accident, plaintiff was married and residing in the same household as her husband. *Id.* Plaintiff's husband owned another vehicle which was insured under an insurance policy with no-fault coverage and uninsured motorist protection. *Id.* Plaintiff's husband was the sole named insured on the policy and his vehicle was the only vehicle listed in the policy. *Id.* This court in *Methven–Abreu*, considered whether an "owned vehicle" exclusion was "void as against public policy" and in light of *Kau. Id.* at 396, 834 P.2d at 285–86. At issue was the following exclusionary language:

A. We do not provide Uninsured Motorists Coverage for bodily injury sustained by any person:

1. *While occupying,* or when struck by, *any motor vehicle owned by you or any family member which is not insured for this coverage under this policy* [.]

*Id.* at 395, 834 P.2d at 285 (emphases added). This court struck down this exclusion as void, explaining that "[a]s an insured under her husband's policy, [plaintiff] was covered for purposes of the uninsured motor benefits whether or not she was injured while occupying a vehicle specifically declared under the policy." *Id.* at 396, 834 P.2d at 286. The *Methven–Abreu* court relied on the language of the uninsured motorist statute and the clear legislative intent that mandated the availability of uninsured motorist coverage to " 'the insured, spouse, or minor children of either, resident in the named insured's household[.]' " *Id.* at 397, 834 P.2d at 286 (quoting *Kau*, 58 Haw. at 51, 564 P.2d at 444 (quoting Hse. Stand. Comm. Rep. No. 194, in 1965 House Journal, at 582)). The court further dismissed as irrelevant the argument

that plaintiff "should be precluded from recovering uninsured motor benefits because she was financially irresponsible in not insuring her vehicles." *Id.* at 396–98, 834 P.2d at 286.

In both *Kau* and *Methven–Abreu,* the exclusionary language at issue is nearly identical to Exclusion No. 1 in the Policy. All three exclusions preclude (1) uninsured motorist coverage (2) to an insured who is (3) "occupying" (4) any "motor vehicle owned by the named insured" or (5) "any family member" or "resident of the same household" (6) which is "not insured" under the respective policy. *See* discussion *supra.* In light of the similar language and the fact that Hawai'i's legislature intended to treat underinsured motorist coverage "in the same manner that uninsured motorist coverage is presently treated," *Taylor,* 90 Hawai'i at 308, 978 P.2d at 746 (quoting Hse. Stand. Comm. Rep. No. 1150–88, at 1248) (block format omitted), the court correctly determined that because Defendant's "owned but not insured" exclusion attempted to limit Plaintiff's entitlement to underinsured motorist coverage, the exclusion is void as against public policy.

### B.

 Exclusion No. 4 states, in pertinent part, that Defendant "do[es] not provide Uninsured Motorists Coverage ... for bodily injury sustained by any person ... *[w]hile operating any self-propelled vehicle with less than 4 wheels which is not insured* for this coverage under this policy." (Emphasis added.) Here, Defendant contends the issue is the extent to which this court overruled *Nat'l Union Fire Ins. Co. v. Ragil,* 72 Haw. 205, 811 P.2d 473 (1991), in *Dines v. Pac. Ins. Co., Ltd.,* 78 Hawai'i 325, 893 P.2d 176 (1995). In *Ragil,* this court held that a motorcyclist

injured by an underinsured motor vehicle is not entitled to recover benefits from his or her own motor vehicle insurance policy because the Hawai'i legislature exempted motorcycles from the no-fault insurance requirements. 72 Hawai'i at 207, 215–16, 811 P.2d at 474, 478. Defendant contends that because the no-fault insurance policy in *Dines* did not include an exclusion similar to the one here and in *Ragil,*[14] *Dines* is inapposite to the case at bar.

In *Dines,* the plaintiff, who was operating a motorcycle at the time of the accident, was injured by an unidentified hit-and-run driver of an automobile. 78 Hawai'i at 326, 893 P.2d at 177. Plaintiff attempted to obtain uninsured motorist benefits from the defendant, his motor vehicle insurance provider. *Id.* The plaintiff's insurance policy lacked an exclusion similar to the case at bar. However, the plaintiff did have a separate motorcycle insurance policy provided by another defendant insurance provider. *Id.* The motorcycle insurance policy, however, did not include any optional uninsured motorist coverage because the plaintiff had expressly rejected such coverage. *Id.*

A majority of this court held that the plaintiff motorcyclist could recover uninsured motorist benefits from his motor vehicle insurance policy. In overruling *Ragil,* the majority stated that

> [b]ecause [the *Ragil* court] focused solely on the legislature's distinct statutory mechanisms for insuring "motor vehicles" (HRS ch. 431:10C) and motorcycles (HRS ch. 431:10G), *the Ragil court missed the point regarding the right of an automobile policy's named insured to derive the benefits of the [uninsured motorist] coverage that HRS § 431:10C–301(b)(3)* [15] *man-*

---

**14.** The policy exclusion in *Ragil* stated "[w]e do not provide Liability Coverage: ... 8. For the ownership, maintenance or use of any motorized vehicle having less than four wheels." 72 Haw. at 210, 811 P.2d at 475–76.

**15.** HRS § 431:10C–301(b)(3) (Supp.1992), which is the same today as it was when *Dines* was decided states, in pertinent part:

**Required motor vehicle policy coverage**

. . .

(b) *A motor vehicle insurance policy shall include:*

. . .

(3) With respect to any motor vehicle registered or principally garaged in this State, *liability coverage* ... for bodily injury or death ... *for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles* because of bodily injury ... resulting therefrom; provided that the coverage required under this paragraph shall not be applicable where any named insured in the policy shall reject the coverage in writing[.] (Emphases added.)

dates an automobile insurer to offer and for which the named insured has paid. Dines, 78 Hawai'i at 331, 893 P.2d at 182 (emphasis added). Significantly, the Dines majority held that uninsured motorist insurance coverage "attaches to the named insured's person and not to any particular vehicle-'motor' or otherwise." Id. (emphasis omitted). In support of this principle, the Dines majority looked to the policy embodied in the uninsured motorist statute, noting that "HRS § 431:10C–301(b)(3) mandates that the insured vehicle (i.e., the 'covered auto' named in the policy) need not be involved in the accident in order for the named insured to be entitled to collect [uninsured motorist] benefits[.]" Id. at 328, 893 P.2d at 179. See also Dawes, 77 Hawai'i at 124, 883 P.2d at 45 (1994) (" 'The public policy embodied in the [uninsured motorist] statute directs that uninsured motorist coverage be provided to insureds when they are not occupants of insured vehicles as well as when they are.... The coverage is portable: The insured and family members ... are insured no matter where they are injured. They are insured when injured in an owned vehicle in the policy, in an owned vehicle not named in the policy, in an unowned vehicle, on a motorcycle[.]' " (Emphases added.) (Quoting Harvey v. Travelers Indem. Co., 188 Conn. 245, 449 A.2d 157, 159–60 (1982))). Accordingly, Dines concluded that when a named insured is "injured by an uninsured motorist from whom the named insured is legally entitled to recover damages," the named insured "is entitled to [uninsured motorist] coverage no matter where he or she is injured, be it in an automobile or a rocking chair on a front porch, or on a motorcycle, a bicycle, a horse, a pogo stick, or on foot." Id. at 331–32, 893

P.2d at 182–83 (footnote omitted) (emphasis added).

In light of the foregoing and the premise that Hawai'i's legislature intended to treat underinsured motorist coverage "in the same manner that uninsured motorist coverage is presently treated," Taylor, 90 Hawai'i at 308, 978 P.2d at 746 (quoting Hse. Stand. Comm. Rep. No. 1150–88, at 1248) (block format omitted), the court correctly determined that because Defendant's exclusion attempted to limit Plaintiff's entitlement to underinsured motorist coverage, the "less than four wheels" exclusion is inconsistent with the holding in Dines and is, therefore, void as against public policy.

### C.

As to the "reasonable belief" exclusion, Defendant claims that Exclusion No. 7 of the Policy is applicable in the instant case. Exclusion No. 7 states that Defendant does "not provide [u]ninsured [m]otorist coverage for property damage or bodily injury sustained by any person ... [u]sing a vehicle without a reasonable belief that the person is entitled to do so." Defendant argues that Plaintiff could not have reasonably believed that he was entitled to operate a motorcycle because, at the time of the accident Plaintiff was in violation of HRS §§ 286–102, 286–110(e), and 286–116 (1993 and Supp.1998).[16]

As previously noted, the court concluded that the reasonable belief exclusion was inapplicable in the case at bar because the language of the exclusion is "susceptible of at least three interpretations" and is therefore "ambiguous" and must be "strictly construed against [Defendant]."[17] Alternatively, the

---

16. HRS § 286–102 provides, in relevant part, that:

(a) No person ... shall operate any category of motor vehicles listed in this section without first being appropriately examined and duly licensed as a qualified driver of that category of motor vehicles.

(b) A person operating the following category or combination of categories of motor vehicles shall be examined as provided in section 286–108 and duly licensed by the examiner of drivers:

....

(2) Motorcycles and motor scooters[.]
(Emphases added.)

HRS § 286–110(e) states, in relevant part that "[n]o holder of a temporary instruction permit shall operate a motorcycle or a motor scooter during hours of darkness or carry any passengers." (Emphases added.)

HRS § 286–116 provides, in relevant part, that "[e]very licensee shall have a valid driver's license in the licensee's immediate possession at all times[.]" (Emphasis added.)

17. Other jurisdictions have referred to clauses like Exclusion No. 7 as "permissive use" exclusions, see, e.g., Lavergne v. Thomas, 758 So.2d 197, 200–01 (La.Ct.App.2000) (analyzing applicability of "reasonable belief" exclusion in light of

court also determined that the reasonable belief exclusion was inapplicable because "[Defendant's] exclusion of only [uninsured] coverage, but not [underinsured motorist] coverage in [Defendant's] reasonable belief exclusion" means the reasonable belief exclusion does not apply to "[underinsured motorist] coverage, or ... creates an ambiguity[.]"

Defendant failed to present argument as to this alternative basis for the court's ruling that the reasonable belief exclusion was inapplicable and failed to sustain its burden of demonstrating error. Therefore, this point

was "waived" on appeal pursuant to Hawai'i Rules of Appellate Procedure Rule 28(b)(7).

### XIII.

In conclusion, for the reasons discussed, the June 19, 2002 judgment is affirmed.

---

whether the driver had permission of the insured to use the automobile at the time of the accident), or "entitlement" exclusions. *See, e.g., Goodman v. Bradbury*, 3 Pa. D. & C.4th 605, 607–08 (1989) (distinguishing between "permissive use" and "reasonable belief to entitlement to use" exclusions and holding that "[a]lthough one can obtain an owner's permission to operate a vehicle without being licensed, one cannot have a reasonable belief of entitlement to operate any vehicle without a valid license").

Whether labeled a "permissive use" or an "entitlement" exclusion, courts have held that the language is "susceptible" of various interpretations. *Hurst v. Grange Mutual Cas. Co.*, 266 Ga. 712, 470 S.E.2d 659, 663 (1996). In *Hurst*, the Georgia Supreme Court held that an exclusion identical to Exclusion No. 7 was "susceptible of three logical and reasonable interpretations":

[(1)] that the user must be authorized by law to drive in order to reasonably believe he is entitled to use a vehicle; [(2)] that the user must have the consent of the owner or apparent owner in order to reasonably believe he is entitled to use the vehicle; or, [(3)] that the user must have both consent and legal authorization in order to be entitled to use the vehicle.

470 S.E.2d at 663. *See, e.g., Farm & City Ins. Co. v. Gilmore*, 539 N.W.2d 154, 157 (Iowa 1995)(explaining that the term "entitled" in the exclusion "could mean a legal right or authority to drive under the applicable law ... [;] 'consent' or 'permission' from the vehicle owner ... [; or] both consent and legal entitlement"); *Aetna Cas. & Sur. Co. v. Nationwide Mut. Ins. Co.*, 326 N.C. 771, 392 S.E.2d 377, 379 (1990) (stating that "the fact that [the driver] knew that he had no legal right to drive, is distinguishable from the dispositive question under the policy exclusion of

[the driver's] reasonable belief of being 'entitled' to drive the vehicle based upon the permission of the person in possession of the vehicle"); *Georgia Farm Bureau Mut. Ins. Co. v. John Deere Ins. Co.*, 244 Ga.App. 546, 536 S.E.2d 258, 259–60 (2000) (quoting *Hurst*, 470 S.E.2d at 663); *Canadian Indem. Co. v. Heflin*, 151 Ariz. 257, 727 P.2d 35, 37 (Ct.App.1986) (reasoning that the entitlement "exclusion at issue here is clearly ambiguous-as shown by the divergent interpretations given to it by the parties and the trial court"); and *State Auto. Mut. Ins. Co. v. Ellis*, 700 S.W.2d 801, 802 (Ky.Ct.App.1985)(noting ambiguity of the exclusionary language because "[t]he policy does not ... specify whether 'entitled' means simply obtaining permission from the owner of the vehicle or whether a valid license from the applicable state would also be required to avoid exclusion from coverage").

Other jurisdictions, however, have held that "entitlement" exclusions are unambiguous. *See Smith v. Cincinnati Ins. Co.*, 769 N.E.2d 599, 603 (Ind.Ct.App.2002) (stating "entitlement" exclusion is "unambiguous"); *Huggins v. Bohman*, 228 Mich.App. 84, 578 N.W.2d 326 (1998) (concluding that plain language of exclusion "is not ambiguous" and determining that "rational minds would agree that [the driver], an underage, unlicensed, inexperienced driver, was not 'entitled' to drive the automobile"); and *Omaha Prop. & Cas. Ins. Co. v. Peterson*, 865 S.W.2d 789, 790–91 (Mo.Ct.App.1993) (concluding exclusion "was not ambiguous" and applying "two-part analysis: (1) whether the driver had a subjective belief that he or she was entitled to use the car, and (2) whether this belief was reasonable"). We express no opinion as to whether such an exclusion is ambiguous or not ambiguous.